[Cite as *State v. Tabassum*, 2011-Ohio-6790.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25568 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAWAID TABASSUM | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 04 0925 |

DECISION AND JOURNAL ENTRY

Dated: December 30, 2011

MOORE, Judge.

{¶1} Appellant, Jawaid Tabassum, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On January 22, 2010, Fred Morehead walked into a convenience store owned and operated by Jawaid Tabassum. Morehead purchased three "scratch off" lottery tickets and left the store. When he went across the street to a café and scratched off one of the tickets, he discovered he had won $1000. He returned to the convenience store to collect the money. When Morehead presented the winning ticket, Tabassum told him he would cash the ticket but would deduct $300 for taxes. Tabassum then gave Morehead $700. Morehead is unemployed, and has a payee for his social security disability benefits related to mental health impairments.

{¶3} On April 12, 2010, Tabassum was indicted on the charge of theft from a disabled adult in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. The case proceeded to jury

trial, and on June 29, 2010, the jury found Tabassum guilty of theft and determined that Morehead was a disabled adult within the meaning of the statute. On August 2, 2010, together with restitution and other sanctions, the trial court sentenced Tabassum to twelve months of incarceration which the court suspended upon the condition that Tabassum complete one year of community control.

{¶4} Tabassum timely filed a notice of appeal and raises six assignments of error for our review. We have consolidated the first and second assignments of error and rearranged the remaining assignments of error for ease of discussion.

II.

**ASSIGNMENT OF ERROR I**

"THE COURT ERRONEOUSLY DENIED [TABASSUM]'S RULE 29 MOTION FOR ACQUITTAL AS THE STATE DID NOT PROVE FELONY THEFT BY DECEPTION FROM A DISABLED ADULT AS THERE WAS NOT ANY DOCUMENTATION OR TESTIMONY FROM A BONAFIDE AGENT OF ANY STATE OR FEDERAL AGENCY OR ANYONE ELSE WHO ATTESTED TO THE CERTIFICATION OF [] MOREHEAD AS PERMANENTLY AND TOTALLY DISABLED WHICH IS AN ESSENTIAL ELEMENT OF THE COUNT CHARGED IN THE INDICTMENT. THUS, [] TABASSUM'S CONVICTION FOR THEFT FROM A DISABLED PERSON IS AGAINST THE SUFFICIENCY AND/OR WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO DEMONSTRATE THAT THE STATE'S VICTIM WAS A DISABLED ADULT AS DEFINED BY R.C. 2913.01(DD) ."

**ASSIGNMENT OF ERROR II**

"THE COURT ERRONEOUSLY DENIED [TABASSUM]'S RULE 29 MOTION FOR ACQUITTAL AS THE STATE DID NOT PROVE DECEPTION AS THE LOTTERY TICKET IN QUESTION BELONGED TO [TABASSUM] AND NOT TO [MOREHEAD] AND [TABASSUM] DID IN FACT FOLLOW THE APPROPRIATE PROCEDURES AS TO THAT TICKET."

{¶5} In his first and second assignment of error, Tabassum argues that his conviction was not supported by sufficient evidence. Specifically, he argues that the State failed to prove that the victim was a disabled adult and that Tabassum engaged in deception. We do not agree.

Although, in the statement of his first assignment of error, Tabassum raises the issue of manifest weight, his arguments pertain only to the sufficiency of the evidence, and we limit our discussion accordingly. See App.R. 16(A)(7) and App.R. 12(A)(2). However, a broader discussion of the manifest weight of the evidence is set forth in response to Tabassum's fourth assignment of error below.

{¶6} A motion pursuant to Crim.R. 29 tests the sufficiency of the evidence presented by the State. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. Id. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. Id. at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶7} Here, Tabassum challenges his conviction for theft from a disabled adult in violation of R.C. 2913.02(A)(3), which provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * by deception[.]" R.C. 2913.02(B)(3) provides that "theft from an elderly person or disabled adult is a felony of the fifth degree." A "disabled adult" is defined in R.C. 2913.01(DD) as,

"a person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment, or who is eighteen years of age or older and has been certified as permanently and totally disabled by an agency of this state or the United States that has the function of so classifying persons."

{¶8}   R.C 2913.01(A) defines "deception" as,

"knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

{¶9}   As part of the State's case-in-chief, it provided the testimony of Morehead, Buddy Conley, Bobbie Wamsley, Kathy Harper, and Justin Morris.  Morehead testified that he is forty-nine years old.  He does not work and receives a total of $494 at the beginning of each month from Social Security and SSI because he suffers from anxiety, and he is bipolar and a depressant schizophrenic.  He sometimes does "side jobs," resulting in earnings of $5 to $15 per job.  In the past, Morehead had panhandled, but he made very little money doing so; the most he has ever made was $75.

{¶10}  On January 22, 2010, Morehead was interested in renting a room from Conley.  Conley wanted $250 to rent the room, and Conley needed to borrow $50 to fix his truck.  However, Morehead only had $5 in quarters at that time.

{¶11}  Later that day, Morehead was at the South Street Express, where he purchased instant lottery tickets from Tabassum, who owns the store.  He scratched off some tickets in the store, but he did not win on those tickets.  He then left the store and went across the street to Hope Cafe, a church-run coffee house.  There, he scratched off his last ticket.  He recognized the ticket as a winning ticket and took the ticket back to South Street Express.  He was very excited

and showed the ticket to Tabassum. Morehead then attempted to exit the store. However, Tabassum stopped him and offered to cash the ticket. Morehead agreed, but Tabassum stated that he needed to withhold $300 for taxes. Tabassum then gave Morehead the balance of the winnings of $700. Morehead went back to Hope Cafe with the money, and there he talked with Conley. Morehead gave him $250 to rent Conley's room and loaned Conley $50 to get his truck fixed.

{¶12} Also, while he was at Hope Cafe, Morehead called Bobbie Wamsley, whom he refers to as his "adopted mother" and who is the payee on this Social Security and SSI checks. Morehead told her that he won $1000 on a lottery ticket and that Tabassum had withheld $300 for taxes. Wamsley advised him that taxes are not supposed to be withheld from the winnings.

{¶13} Later, Morehead encountered an acquaintance named Kathy Harper. Harper gave Morehead a ride from Hope Cafe to Wamsley's home. On the way, they stopped at Walmart, and Morehead purchased fishing equipment and other items. He told Harper about winning on a lottery ticket, and he told her that Tabassum had withheld money for taxes.

{¶14} The next day, Morehead contacted Tabassum about withholding the $300, and Tabassum told him to come back to the store, and he would give Morehead the money back. However, Tabassum did not give him the $300, and Morehead contacted the police and made a report.

{¶15} Conley, Wamsley and Harper testified as to their interactions with Morehead on January 22, 2010. Each individual's testimony set forth essentially the same encounters with Morehead as Morehead had set forth in his testimony.

{¶16} Justin Morris, an investigator for the Ohio Lottery Commission, testified that he was contacted by the Commission's Cleveland office to investigate a complaint made by

Morehead that Tabassum had cashed his ticket at his store and withheld money for taxes. Morris further testified as to the proper procedure for obtaining winnings of $600 or more from an instant ticket. In such circumstances, the winner would take the ticket to an authorized lottery retailer. The retailer would then print a "pay to the bearer and claim" form, which the winner would take to a bank to obtain the prize money. Although the lottery ticket should be signed, it is not necessary for the winner to do so. No money is withheld from the winnings for tax purposes. The rules as to cashing tickets of particular winning amounts are explained to lottery retailers.

{¶17} Viewing the evidence in the light most favorable to the prosecution, the State provided sufficient evidence that Morehead was a "disabled adult." Morehead and Wamsley both testified that Morehead suffers from certain conditions due to a childhood accident. Both testified that Morehead does not work and receives Social Security and SSI due to his conditions. A jury could reasonably infer that Morehead's conditions prevented him from "working at substantially remunerative employment," and that these conditions would continue for a period longer than twelve months. Further, a reasonable juror could determine that neither panhandling nor the "side jobs" to which were testified constitute "substantially remunerative employment." Therefore, there was sufficient evidence from which a jury could find that Morehead suffered from an impairment of the sort set forth within the statute. Because the statute requires either proof of such an impairment or certification of a disability, the State was not required to provide certification.

{¶18} Further, the State provided sufficient evidence that Tabassum engaged in deception by making false representations that he could withhold taxes from lottery winnings and that a lottery retailer is permitted to cash a lottery ticket in the amount of $1000. Morris

testified that neither course of action is permitted of lottery retailers. Morehead testified that Tabassum cashed the ticket and withheld $300 for taxes. Harris and Wamsley confirmed that Morehead told them that he had won money on a lottery ticket, from which the lottery "agent" had withheld $300 for taxes. Further, Harris, Wamsley, and Conley testified that Morehead had a significant amount of cash on the evening of January 22, 2010, which was out of the ordinary for Morehead.

{¶19} Accordingly, Tabassum's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

"THE CONVICTION OF [] TABASSUM WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶20} In his fourth assignment of error, Tabassum argues that his conviction was against the manifest weight of the evidence. We disagree. Although his assignment further specifies his conviction was not supported by sufficient evidence, his argument does not address this point, and, as we have already addressed his arguments as to the sufficiency of the evidence regarding the elements of "deception" and "disabled adult," we decline to further address the sufficiency of the evidence. See App.R. 16(A)(7) and App.R. 12(A)(2).

{¶21} When a defendant asserts that his conviction is against the manifest weight of the evidence,

"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

{¶22} In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue* (1994), 97 Ohio

App.3d 459, 466, citing *Ostendorf-Morris Co. v. Slyman* (1982), 6 Ohio App.3d 46, 47 and *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 154.

{¶23} At trial Tabassum provided the testimony of himself, Charles Shanafelt, and Joshua Clark. Tabassum testified that on January 22, 2010, he, Morehead, Shanafelt, and Clark were present in the South Street Express. Morehead and Tabassum were playing lottery instant win tickets. Tabassum won $1000 on one of his tickets, and Morehead seemed unhappy about Tabassum's win. Morehead asked Tabassum to "hook him up." The next day, Morehead returned to South Street Express when Tabassum was opening up the store. Morehead told Tabassum to give him some money, and Tabassum offered him $20. Morehead declined and demanded more money, and Tabassum told him that he would not give him more money. Morehead became angry, and Tabassum put the $20 back and told Morehead that he would not give him any money. Morehead left. A few days later, Morehead called Tabassum demanding $300 because "the ticket could have been [Morehead's]." Tabassum replied that it was his ticket, and Morehead again became angry and stated that he was going to "bring the business down."

{¶24} Charles Shanafelt testified that he regularly patronizes the South Street Express, and he knows Tabassum from his frequent visits to his store. Shanafelt is familiar with Morehead from the area and the store, and he has observed Morehead to become agitated and "temperamental." On the date at issue, Shanafelt was in South Street Express when Tabassum and Morehead were there. Morehead was not winning on his lottery tickets, and he threw them in the trash in an angry way. Tabassum was also playing lottery tickets, and said that he "hit," and was smiling and held up the ticket. Morehead seemed disappointed about Tabassum's win.

{¶25} Joshua Clark testified that he was working at South Street Express on January 22, 2010. He had been working there for about one week. Clark was familiar with Morehead from his presence in the neighborhood. He described Morehead as "an angry person." On the day at issue, Tabassum was playing instant lottery tickets and won. Morehead was also at the store playing lottery tickets, and he was losing and grumbling and grunting, and threw his tickets into the trash can.

{¶26} On cross-examination of the State's and defense witnesses, each party cast doubt upon the opposing witnesses' credibility. However, we have repeatedly stated that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. No. 25161, 2010-Ohio-3296, at ¶15. Further, the trier of fact, here the jury, "has the right to place considerable weight on the testimony of the victim." *State v. Felder* (July 29, 1992), 9th Dist. No. 91CA005230, at *1.

{¶27} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury's resolution of the conflicting testimony was unreasonable. Consequently, this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Tabassum guilty of theft from a disabled adult. Although inconsistencies existed between the witnesses' testimony, "the jury is free to believe all, part, or none of the testimony of each witness." (Quotations and citations omitted.) *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, at ¶35. Where the evidence indicates that a jury could reasonably choose between the State's or the defendant's version of the events, "[a] conviction is not against the manifest weight because the jury chose to credit the State's version of events." *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, at ¶18, citing *State v.*

*Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, at ¶35. Accordingly, Tabassum's fourth assignment of error is overruled.

<b><u>ASSIGNMENT OF ERROR III</u></b>

"[]THE TRIAL COURT COMMITTED PLAIN IF NOT STRUCTURAL ERROR WHEN IT OMITTED BASIC DEFINITIONS IN THE JURY INSTRUCTIONS AND, IN EFFECT, CHARGED FOR AN OFFENSE NOT INDICTED.[] THE COURT ERRONEOULSY CHANGED THE WORDING OF THE STATUTE WHICH DEFINES A DISABLED ADULT IN ITS INSTRUCTIONS TO THE JURY WHEN IT IMPERMISSIBLY SUBSTITUTED THE WORD 'UNFIT' FOR 'UNABLE' []. THIS CHANGE IN WORDING MISLEADS THE JURY AS THE PLAIN MEANING OF THE WORDS ACCORDING TO THE DICTIONARY ARE NOT THE SAME AND ARE NOT INTERCHANGEABLE."

**{¶28}** In his third assignment of error, Tabassum argues that that trial court erred in its instructions to the jury by deviating from the statutory language defining a "disabled adult." We disagree.

**{¶29}** Tabassum failed to object to the jury instruction of which he now complains. Where a party has failed to raise an objection in the trial court, the objection may still be assigned as error on appeal if a showing of plain error is made. *State v. Hairston,* 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶9; Crim.R. 52(B). However, notice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Bray,* 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12. Therefore, we will not reverse the trial court decision unless it has been established that the trial court outcome clearly would have been different but for the alleged error. Id.

**{¶30}** Here, the trial court instructed the jury that a disabled adult is "a person who is 18 years of age or older who has some impairment of body or mind that makes the person unfit to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least 12 months

without any present indication of recovery from the impairment, or who is 18 years of age or older and has been certified as permanently and totally disabled by an agency of the State or the United States that has the function of so classifying persons." Tabassum argues that the court erred by utilizing the word "unfit" in the instructions, instead of the term "unable," as used in the statutory definition. Tabassum argues that this alleged error is "plain error now because not only has the first part of the statute been rendered wrong but also the statutory language says 'and' which requires certification where none was given in this case."

{¶31} However, as set forth in our discussion of Tabassum's first and second assignments of error, the statutory definition provides that a disabled adult is a person eighteen years of age or older who suffers from an impairment of the type therein set forth "or" who has been certified as disabled by an appropriate state or federal agency. R.C. 2913.01(D)(D). In regard to the trial court's use of the term "unfit" instead of "unable," the dictionary definitions of these words is very similar. Webster's definition of "unfit" includes "incapable" and "incompetent;" whereas its definition of "unable" likewise includes "incapable" and "incompetent." Merriam-Webster's Eleventh Collegiate Dictionary (2005) 1359, 1367. Therefore, we cannot say that the trial court use of the term "unfit" instead of "unable" constituted plain error. In any event, Tabassum has provided no indication of how the result of the trial would have been different if the trial court had utilized the term "unable." Accordingly, Tabassum's third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

"[] TABASSUM WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS BECAUSE OF PROSECUTORIAL MISCONDUCT AT TRIAL AND DURING CLOSING ARGUMENT WHEN HE PRESENTED HYPOTHETICALS DURING THE TRIAL WHICH HAD NO BASIS IN FACT OR LAW

ASSOCIATED WITH THIS CASE AND ONLY SERVED TO PREJUDICE OR BIAS THE JURY."

{¶32} In his fifth assignment of error, Tabassum argues that he was denied a fair trial because the State engaged in prosecutorial misconduct when it utilized a hypothetical situation during redirect examination of Morris. We disagree. Although Tabassum further sets forth alleged prosecutorial misconduct during closing arguments in his assignment of error, he has provided no argument on this point, and, accordingly, we will limit our discussion to the purported prosecutorial misconduct during redirect examination. See App.R. 16(A)(7) and App.R. 12(A)(2).

{¶33} "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State v. Papp* (1978), 64 Ohio App.2d 203, 211. The defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Loza* (1994), 71 Ohio St.3d 61, 78. Here, in support of his argument, Tabassum cites to the following questions posed by the prosecution during redirect examination of Morris:

"Q.    I think you just talked about, on cross, how[ ]Tabassum could make the claim on the ticket, right, to a bank?

"A.    Yes.

"Q.    And, in fact, we talked in direct that he did fill out a claim for the ticket?

"A.    Yes.

"Q.    Based on your knowledge of the lottery, does anything prevent[ ] Tabassum from having paid somebody $700 for that ticket, kept it, and then made the claim himself to you at the bank?

"A.    There's rules regarding that.

"Q.    Aside from the rules, if he had done that, would it look like, as far as your paperwork says, that he claimed the $1000 ticket?

"A.    Yes."

At this point, the defense objected on the basis that the questioning was purely hypothetical, and the court overruled the objection.

**{¶34}** Assuming without deciding that the hypothetical question was improper, we cannot say that it deprived Tabassum of a fair trial. Tabassum has failed to demonstrate that there is a reasonable probability that but for the prosecutor's use of the above quoted hypothetical during redirect examination, the result of the proceeding would have been different. See *Loza*, 71 Ohio St.3d at 78. Accordingly, Tabassum's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

"THE PROSECUTION HAD OPEN FILE DISCOVERY, WHICH REQUIRED THE PROSECUTION TO GIVE TO THE DEFENSE ANY EXCULPATORY EVIDENCE IT MAY HAVE. I[N] THIS CASE, THE SIGNED LOTTERY TICKET WAS IN THE KNOWLEDGE OF THE PROSECUTION BUT WAS NOT MADE AVAILABLE TO THE DEFENSE FOR REVIEW."

**{¶35}** In his final assignment of error, Tabassum argues that the prosecution failed to provide the signed lottery ticket, which he alleges was exculpatory evidence. We disagree.

**{¶36}** Crim.R. 16(B), provides in relevant part,

"Upon receipt of a written demand for discovery by the defendant, and except as provided in * * * this rule, the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state[.]"

**{¶37}** "Potentially exculpatory evidence subject to disclosure under Crim.R. 16 is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *State v. Iacona* (Mar. 15, 2000), 9th Dist. No. CA 2891-M, at *5, quoting *State v. Johnston* (1988), 39 Ohio St.3d 48.

{¶38}  We observe that Tabassum's argument is predicated upon the assumption that the State actually had possession of the lottery ticket.  However, there is nothing in the record that suggests that the State possessed and also withheld the lottery ticket from pretrial discovery.  Furthermore, the theory of the prosecution did not turn upon who signed the lottery ticket.  Morris acknowledged that winning tickets are often not signed.  Further, Tabassum has not established how production of the signed ticket would demonstrate who purchased the ticket and who was entitled to its winnings.  Therefore, we cannot say that the signed lottery ticket was material, as Tabassum has not shown that there is a reasonable probability that disclosure of the signed ticket would have changed the outcome of the proceeding.  See *Johnston*, 39 Ohio St.3d at paragraph five of the syllabus.  Accordingly, Tabassum's sixth assignment of error is overruled.

III.

{¶39}  Tabassum's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(E).  The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

LYDIA EVELYN SPRAGIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.