[Cite as *State v. Ibrahim*, 2013-Ohio-983.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 12CA0048-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| IBRAHNIM IBRAHIM | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 08CR0433 |

DECISION AND JOURNAL ENTRY

Dated: March 18, 2013

CARR, Judge.

{¶1} Appellant Ibrahnim Ibrahim appeals his conviction for possession of drugs. This Court reverses and remands.

I.

{¶2} In May 2008, Ibrahim, a resident of Maine, was riding in a van with four other people when the van became disabled as a result of an accident. After the five occupants were taken to the hospital, a trooper with the Ohio State Highway Patrol had the van towed from the interstate to a nearby parking lot where he conducted an inventory search of the vehicle. The search disclosed numerous small plastic bags of a dry, green plant-like material. Believing that the leaves were not marijuana, but suspecting that they were another illegal substance, the trooper collected the bags as evidence and mailed them to the crime lab for analysis. More than four months later, the Grand Jury indicted Ibrahim on one count of possession of cathinone, a Schedule I drug, a felony of the fifth degree. Although the prosecutor immediately requested the

issuance of a warrant upon indictment on Ibrahim at his last known address in Maine, Ibrahim was not served with the indictment for approximately three years.

{¶3} Ibrahim pleaded not guilty at arraignment and the matter was tried to a jury. The jury found Ibrahim guilty of the lone charge. Two weeks later, Ibrahim filed a motion for acquittal pursuant to Crim.R. 29, arguing that the State failed to present sufficient evidence to convict him and that the State violated his right to a speedy trial by failing to serve him with the indictment for three years. The trial court continued sentencing to allow time for consideration of the motion. Immediately prior to sentencing, the trial court denied Ibrahim's motion for acquittal and sentenced him to 48 days in jail, with credit for the 48 days he served. Ibrahim timely appealed and raises two assignments of error for review. We consider the second assignment of error first as it is dispositive of the appeal.

II.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO ACQUIT UNDER CRIM.R. 29 AFTER THE STATE RESTED ITS CASE BECAUSE THE EVIDENCE WAS INSUFFICIENT TO PROVE THAT APPELLANT POSSESSED CATHINONE.

{¶4} Ibrahim argues that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29 after the State rested. This Court agrees.

{¶5} Crim.R. 29 provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001) quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶6}** The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570 (Dec. 12, 2001); *see, also*, *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

**{¶7}** Ibrahim was convicted of possession of cathinone in violation of R.C. 2925.11(A)(C)(1)(a), which states, in relevant part: "No person shall knowingly obtain, possess, or use a controlled substance * * *." R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{¶8}** "Possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21(D)(1) states that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." This Court has repeatedly held that "a person may knowingly possess a substance or object through either actual or constructive possession." *State v. See*, 9th Dist. No. 08CA009511, 2009-Ohio-2787, ¶ 10, quoting *State v. Hilton*, 9th Dist. No. 21624, 2004-Ohio-1418, ¶ 16. "'Constructive possession exists when an individual knowingly

exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Reis*, 9th Dist. No. 26237, 2012-Ohio-2482, ¶ 7, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. This Court continues to recognize that "the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." (Internal quotations omitted) *Reis* at ¶ 7, quoting *State v. Graves*, 9th Dist. No. 08CA009397, 2011-Ohio-5997, ¶15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.). Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it. *See* R.C. 2925.01(K). Nevertheless, "constructive possession may be inferred from the drugs' presence in a usable form and in close proximity to the defendant." *State v. Figueroa*, 9th Dist. No. 22208, 2005-Ohio-1132, ¶8, citing *State v. Thomas*, 9th Dist. No. 21251, 2003-Ohio-1479, ¶11. In addition, "[c]ircumstantial evidence is itself sufficient to establish dominion and control over the controlled substance." *Hilton* at ¶16.

{¶9} A "controlled substance" is "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.01(C). At the time relevant to this matter, cathinone was classified as a Schedule I controlled substance. *See* former R.C. 3719.41 Schedule I (E)(2).

{¶10} The State presented the testimony of two witnesses.

{¶11} Trooper John Beeler of the Ohio State Highway Patrol testified that he responded to a traffic accident on May 30, 2008, around 2:30 p.m., on interstate 71 involving a Honda Odyssey van. The van was in the middle of the interstate and perpendicular to the roadway. The five occupants of the van, including one woman and four men, were standing on the side of the

road. Trooper Beeler testified that one of the men, whom he could not identify as Ibrahim, was frantic at the scene and asked to be able to retrieve his cell phone charger from the van. The trooper found the request to retrieve a cell phone charger odd given that occupants of the van had been injured in the crash. All five occupants were taken to the hospital and the disabled van was towed from the roadway.

{¶12} Trooper Beeler began conducting an inventory search and noticed a lot of dry, green plant-like material littered throughout the van "like confetti" on the seats, floorboards, in cup holders, in the first and second passenger rows, and the "trunk" portion of the van. Significantly, the trooper testified that the leaves inside the van were "worn into the vehicle[,]" making it clear to him that "[i]t wasn't freshly strewn about." He found a suitcase pushed underneath the third row of seats and a closed cardboard box in the trunk area of the van. When Trooper Beeler opened the suitcase he found women's clothing packed on top of 37 individually packaged plastic bags of a dry, green plant-like material. When he opened the cardboard box, he found women's clothing on top of 24 individually packaged plastic bags full of the same plant-like material. Finally, also in the trunk area, which he described as a "tub" that "sinks down" for storage, the trooper found a white plastic shopping bag that contained a large, open zipper-style plastic bag containing a similar plant-like material. Because of the manner in which the packages had been concealed, Trooper Beeler believed that the packages contained drugs. He, therefore, called his supervisor to help him identify the material.

{¶13} Trooper Beeler testified that he told his supervisor that the occupants of the van were Somalis, and the supervisor surmised that the plant-like material was khat, a chewable leafy green substance common in Somalia. Trooper Beeler admitted that no one at the scene told him they were Somalis; rather, he testified that he knew they were Somalis "[j]ust by seeing and

speaking with them[.]" He testified that he then packaged the material found in the van as evidence and mailed it to a crime lab in Columbus.

{¶14} Trooper Beeler testified that he went to the hospital and spoke with some of the van's occupants, although he could not remember whether he spoke with Ibrahim. He was able to determine that the sole female occupant was the owner and driver of the van. He did not know where Ibrahim had been sitting in the van. Although the trooper took witness statements from some of the van's occupants, he did not take a statement from Ibrahim. In fact, he conceded that no one questioned Ibrahim from the time of the accident until the time of the indictment about what he knew about the accident or the plant-like material. The trooper admitted, however, that none of the other occupants implicated Ibrahim with having anything to do with the green plant-like material. Moreover, he admitted that no one made any effort to determine to which occupant the plant-like material belonged; rather, he just "assumed" that everyone inside the van "possessed" it. He further admitted that there was no investigation to determine who might have exercised dominion and control over the material. Trooper Beeler testified that Ibrahim was never tested for drugs in his system, and he did not appear intoxicated at the scene.

{¶15} Trooper Beeler identified numerous photographs he took at the scene of the outside and inside of the van. Although photographs showed dry, leafy material throughout the van, the trooper was not able to testify to the areas of the van reflected in each picture. He could identify some areas in the front seat and the recessed trunk area, but he was not able to distinguish most areas depicted in the photographs. Trooper Beeler testified that the speed limit on the interstate was 65 mph, and that he would expect that a collision at that speed would be a violent event which would reasonably propel dry leaves throughout the van. He thought it was significant that the cardboard box in the recessed trunk area had remained upright.

{¶16} Finally, Trooper Beeler testified that Abdi Aden, one of the other occupants in the van, admitted that he knew there was plant-like material in the van and that some people had been using it. Although Aden told him that two of the van's occupants left the vehicle when they stopped in Buffalo, New York, on their way from Maine to Columbus, Aden did not identify either person and did not explained what the people might have been doing.

{¶17} Brandon Werry is the director at the Ohio State Highway Patrol Crime Lab in Columbus. He testified that his primary responsibility is to review the casework by analysts at the lab for accuracy. He testified that he analyzed the evidence Trooper Beeler sent in this case, and that he has analyzed substances for the presence of cathinone on approximately twelve prior occasions. He testified that cathinone is a Schedule I drug[1] found in the khat plant, a shrub native to Eastern Africa and the Middle East. Although Ohio law banned the possession of cathinone at the time, Mr. Werry testified that possession of the khat plant is not illegal. He testified that the leaves are chewed for its stimulant properties. Mr. Werry explained that, once cut, the cathinone in khat rapidly degrades within 24-48 hours into cathine, a Schedule IV stimulant, unless it is dried to halt the chemical conversion.

{¶18} Mr. Werry testified that he bundled the 62 bags of green plant material he received from Trooper Beeler into groups of 8, 8, 8, 8, 7, 6, 6, 6, 4, and 1 bags for testing. He testified that the items he received for testing contained both cathinone and cathine. He received

---

[1] On December 20, 2012, Sub. H.B. No. 334 went into effect, amending R.C. 3719.41, which lists the Schedules of controlled substances, and deleting cathinone as a Schedule I stimulant. The legislation added a new category of Schedule I stimulants called "Substituted cathinones." On March 13, 2013, R.C. 3719.41 was again amended. Cathinone is not listed as a Schedule I stimulant, although "Substituted cathinones" comprise a lengthy category. R.C. 3719.41 Schedule I (E)(7)(a)-(d).

only the plastic bags found in the suitcase, cardboard box, and white shopping bag. He did not receive for testing any of the loose leaves that Trooper Beeler saw throughout the van. Mr. Werry testified that one cannot tell simply by looking at the leaves whether they contain cathinone. Because of the rapid degradation process, he testified that the leaves must be analyzed to determine whether they contain cathinone.

{¶19} Finally, Mr. Werry testified that, although fingerprints were taken from the plastic bags found in the van, he did not conduct any fingerprint analysis.

{¶20} When the State first rested, it had presented no evidence that Ibrahim knowingly possessed cathinone. There was no evidence that Ibrahim had any leaves on his person or that he was tested for the presence of drugs in his system. Trooper Beeler admitted that Ibrahim did not appear intoxicated at the scene.

{¶21} The State argues that Ibrahim constructively possessed cathinone because he was in the van where dry, green plant-like material tested positive for the presence of cathinone, and he was capable of exercising dominion and control over the drug. The evidence presented by the State, however, indicated that 61 of the 62 bags of leaves found to contain cathinone were found in either a closed suitcase or closed cardboard box, both of which otherwise contained only women's clothing. The owner and driver of the van was a woman. The State presented no evidence to link Ibrahim to the suitcase or cardboard box. It is unreasonable to infer that he would have had any authority to open closed containers containing only the female occupant's personal items.

{¶22} Moreover, although the trooper found an open plastic bag of leaves inside a shopping bag, he found it in the recessed "tub" portion of the van's trunk. The State did not present any evidence to show where Ibrahim was sitting in the van. Although cathinone was

present in a usable form in the van, the State failed to present evidence that it was in close proximity to Ibrahim or that he could access it. Furthermore, mere access to the bag was not enough to establish dominion and control. While it may be reasonable to infer that this one bag of leaves was open to allow for its use in the van by those who knew it was there and had authority to use the leaves, there was no evidence that Ibrahim knew of the bag's presence, could reach it, or that he had any authority to use the leaves.

{¶23} Although there were remnants of leaves throughout the van, indicating their one-time use, Trooper Beeler testified that they were "worn into the vehicle," and it was clear that they "[weren't] freshly strewn about," giving rise to the reasonable inference that the leaves had not recently been chewed, further failing to show that Ibrahim had any ability to exercise dominion and control over the cathinone. Moreover, Ibrahim was not tested for drugs in his system and Trooper Beeler testified that he did not appear intoxicated. Accordingly, Ibrahim's constructive possession of cathinone cannot be inferred merely from the presence of the drug in a usable form in a recessed area of the van and in the absence of evidence of Ibrahim's authority over the drug's use or the distribution of those leaves to anyone in the van. Moreover, no one questioned Ibrahim regarding the cathinone, and no other occupant of the van linked Ibrahim to the cathinone. Because the State failed to present evidence that Ibrahim had constructive possession, i.e., any ability or authority to exercise dominion and control, of any cathinone found in the van, there was insufficient evidence to take the case to the trier of fact. Accordingly, the trial court erred when it denied Ibrahim's motion for judgment of acquittal pursuant to Crim.R. 29. Ibrahim's second assignment of error is sustained.

## ASSIGNMENT OF ERROR I

THE POST-INDICTMENT DELAY BY THE STATE TO ARREST
APPELLANT AND SERVE HIM WITH THE INDICTMENT VIOLATED HIS
RIGHT TO SPEEDY TRIAL UNDER THE SIXTH AMENDMENT OF THE
UNITED STATES CONSTITUTION.

**{¶24}** Ibrahim argues that the State's three-year delay in serving him with the indictment violated his right to speedy trial. Based on our resolution of the second assignment of error, Ibrahim's first assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

**{¶25}** Ibrahim's second assignment of error is sustained. We decline to address his first assignment of error. The judgment of the Medina County Court of Common Pleas is reversed and the cause remanded for the trial court to vacate Ibrahim's conviction for possession of cathinone.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.


APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.