[Cite as *State v. Rowe*, 2016-Ohio-5395.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

JEREMIAH N. ROWE

    Appellant

C.A. No.     27870

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2013 02 0424 (B)

DECISION AND JOURNAL ENTRY

Dated: August 17, 2016

MOORE, Judge.

{¶1} Defendant-Appellant Jeremiah N. Rowe appeals from the judgment of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} In 2013, Mr. Rowe was indicted in a multi-count indictment, which was later supplemented, involving charges concerning events occurring on two separate dates: November 24, 2012, and February 11, 2013. The November 24, 2012 incident involved a shooting at business and the February 11, 2013 incident involved the execution of a search warrant at a residence on Maxen Drive in Akron based upon suspected drug trafficking. With respect to the November 24, 2012 incident, Mr. Rowe was charged with improperly discharging a firearm at or into a habitation, along with an accompanying firearm specification, and having weapons while under disability. With respect to the February 11, 2013 incident, Mr. Rowe was charged with

trafficking in heroin, possession of heroin, possession of marijuana, and two counts of having weapons while under disability.

{¶3} While Mr. Rowe initially entered a guilty plea, he was later allowed to withdraw it. The matter proceeded to a jury trial on all counts aside from the possession of marijuana charge, which was tried to the court. The trial court granted Mr. Rowe's Crim.R. 29 motion with respect to the charge of improperly discharging a firearm at or into a habitation, and the charge and the accompanying firearm specification were dismissed. Mr. Rowe was found not guilty of trafficking in heroin and the jury was unable to reach a verdict on the count for having weapons while under disability related to the November 24, 2012 incident. The State elected to dismiss the latter charge. The jury found Mr. Rowe guilty of possession of heroin and two counts of having a weapon while under disability related to the February 11, 2013 incident. The trial court found Mr. Rowe guilty of the possession of marijuana count. Thus, Mr. Rowe was not convicted of any offenses related to the November 24, 2012 incident. Mr. Rowe was sentenced to a total of 10 years in prison.

{¶4} As the trial court failed, on more than one occasion, to impose a sentence on the possession of marijuana count, Mr. Rowe's prior attempted appeals were dismissed. *See State v. Rowe,* 9th Dist. Summit No. 27778 (May 20, 2015). Following the issuance of a final appealable order, Mr. Rowe has again appealed, raising two assignments of error for our review, which will be addressed out of sequence to facilitate our review.

II.

**ASSIGNMENT OF ERROR II**

THE JURY VERDICT FINDING MR. ROWE GUILTY OF POSSESSION OF HEROIN AND WEAPONS UNDER DISABILITY WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶5} Mr. Rowe argues in his second assignment of error that there was insufficient evidence for a jury to find him guilty of possession of heroin and having weapons while under disability.

{¶6} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} Mr. Rowe was found guilty of possession of heroin in violation of R.C. 2925.11(A), (C)(6) and two counts of having weapons while under disability, one in violation of R.C. 2923.13(A)(2)/(3) and one in violation of R.C. 2923.13(A)(1). Each of these counts involved events that took place on February 11, 2013. While Mr. Rowe appears to assert that he was found guilty of having weapons while under disability with respect to the events of November 24, 2012, such is not the case. The jury was unable to reach a verdict on that count, and it was subsequently dismissed. Accordingly, to that extent, Mr. Rowe's argument is without merit as he was not found guilty of that charge.

{¶8} On appeal, Mr. Rowe appears to only challenge whether there was sufficient evidence that the heroin and firearm were his. There is no dispute that the items were not found on Mr. Rowe's person. Thus, Mr. Rowe's argument is that there was insufficient evidence that he constructively possessed the heroin and the firearm. R.C. 2925.11(A) and (C)(6), when considered together, provide that "[n]o person shall knowingly obtain, possess, or use" heroin.

Possess "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2923.13(A)(1)-(3) provides that:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (1) The person is a fugitive from justice.
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶9}** "This Court has repeatedly held that a person may knowingly possess a substance or object through either actual or constructive possession." (Internal quotations and citations omitted.) *State v. Ibrahim,* 9th Dist. Medina No. 12CA0048-M, 2013-Ohio-983, ¶ 8. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." (Internal quotations and citations omitted.) *Id.; State v. Tucker,* 9th Dist. Lorain No. 13CA010339, 2016-Ohio-1353, ¶ 21. "This Court continues to recognize that the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." (Internal quotations and citations omitted) *Id.* Notwithstanding the foregoing, with respect to drug possession, "constructive possession may be inferred from the drug['s] presence in a usable form and in close proximity to the defendant." (Citations omitted.) *Id.* Additionally, "[p]ossession of a drug

includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." (Internal quotations and citation omitted.) *State v. Fletcher,* 9th Dist. Summit No. 23171, 2007-Ohio-146, ¶ 20.

{¶10} After police received complaints of drug dealing at the address on Maxen Drive, police began to investigate the location. Detective Tim Harvey, then with the Street Narcotic Uniform Detail ("SNUD") unit of the Akron Police Department, testified that he began the investigation approximately a week prior to the search. During that time, a confidential informant made a couple of controlled purchases of marijuana from Mr. Rowe at the Maxen Drive residence. Only marijuana was ever purchased during the controlled buys. Through statements made by the informant and Tisha Gindraw, the named lessee of the residence, who was not living at the residence at the time, Detective Harvey learned that Mr. Rowe was living at Maxen Drive. Ms. Gindraw was the girlfriend of one of Mr. Rowe's brothers. Thus, Mr. Rowe was the target of the investigation. Based upon the controlled purchases and information provided by the confidential informant, Detective Harvey was issued a warrant to search the residence. At the time, Mr. Rowe had warrants outstanding for his arrest related to the November 24, 2012 shooting at a business.

{¶11} Detective Brian Nida with the SNUD unit testified that, on February 11, 2013, he was part of a team that was conducting pre-search warrant surveillance of the Maxen Drive residence. That day he was partnered with Detective Ted Male. The team was going to wait until Mr. Rowe left in a vehicle, follow him, and then conduct a traffic stop. Thereafter, police would execute the search warrant.

{¶12} Undercover units observed a vehicle leaving the residence; however, it was not determined who was in the vehicle. Uniformed members of the team, including Detectives Nida and Male, attempted to stop the vehicle, but it fled and led officers on a high-speed chase. Ultimately, the driver of the vehicle, Garland Phelps, was apprehended after he fled on foot into the backyard of the residence on Maxen Drive. Mr. Phelps was a known heroin dealer. Approximately $5400 was recovered from his person.

{¶13} After Mr. Phelps was apprehended, police conducted a search of the residence at Maxen Drive. A surveillance camera was recovered from outside the residence and a refrigerator was found wedged against the door impeding entry. Upon entry, two 17-18 year-old males were found playing video games on the couch. One of the individuals told Detective Harvey that he was visiting his brother, Mr. Rowe.[1] Two photographs that included Mr. Rowe were found, one in the kitchen and one in the living room. A butter knife with cocaine residue was found in the kitchen cupboard and four digital scales were found in the residence. Additionally, approximately 50 grams of marijuana was found in a trash can.

{¶14} Inside the northeast bedroom, 2 small bindles of heroin were found in the register, and inside a bag near the entrance of the closet in that bedroom, covered by some clothes, police found a larger amount of heroin and a .380 semi-automatic pistol. Also in that bedroom, officers discovered a car rental agreement with Mr. Rowe's mother's name on it. That bedroom contained access to the attic, which in turn provided access to the roof. Mr. Rowe was apprehended from the roof of the residence. Detective Male estimated that Mr. Rowe was found approximately 20 feet above where the heroin and firearm were discovered.

---

[1] Mr. Rowe testified that the individual was not technically related to him, but they nonetheless referred to each other as brothers because Mr. Rowe was dating the individual's sister. For ease of discussion, we will refer to him as Mr. Rowe's brother.

{¶15} Sergeant Jason Malick of the narcotics unit of the Akron Police Department estimated that the street value of the heroin found in the bedroom was approximately between $5,000 to $10,000. Detective Harvey acknowledged that an amount of money in that range was found on Mr. Phelps.

{¶16} Also admitted into evidence were judgment entries of three of Mr. Rowe's prior convictions, two for possession of cocaine, and one for aggravated assault, along with a criminal gang specification, as well as the laboratory results confirming the substances found included heroin.

{¶17} Mr. Rowe testified in his own defense about the events of February 11, 2013. At the time, he asserted that he was living on West Thornton Street with his mother and not Maxen Drive. He admitting to selling marijuana and indicated that he sold it out of the Maxen Drive house because he did not want to sell drugs out of his mother's house. Mr. Rowe denied selling cocaine or heroin. He further denied having any involvement with heroin.

{¶18} On February 11, 2013, Mr. Rowe stated that his brother got a call from Mr. Phelps wanting to buy marijuana. Prior to that day, Mr. Rowe indicated he did not know Mr. Phelps. When Mr. Phelps arrived, he repeatedly made comments Mr. Rowe interpreted to mean that there were a lot of police officers in the area. He told Mr. Rowe how much marijuana he wanted to buy and Mr. Rowe went to weigh it. While he was weighing the marijuana, Mr. Rowe's brother and the other individual went into the northeast bedroom and closed the door. When they came out, Mr. Rowe stated that he overheard Mr. Phelps say, "I need to put something up[,]" and that he would be back to get it. Mr. Rowe's brother and the other individual agreed.

{¶19} After Mr. Phelps left, Mr. Rowe noticed what he believed to be police officers outside the residence. At that point, he discarded the marijuana he had in the trash and he decided to flee. He opted to attempt to escape via the roof, which he accessed through the attic through the northeast bedroom; however, police observed him on the roof. Mr. Rowe indicated that he was attempting to flee because of the outstanding warrants related to the November 24, 2012 incident; not because of the contraband in the Maxen Drive residence. Mr. Rowe denied that the gun and heroin found in the bedroom were his, and instead testified that they must have been Mr. Phelps'. While this theory of the case was argued to the jury, it was unavailing to Mr. Rowe.

{¶20} After viewing the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence whereby a jury could reasonably find that Mr. Rowe constructively possessed the heroin and firearm found during the search of the residence on Maxen Drive. *See Ibrahim,* 2013-Ohio-983, at ¶ 8; *Tucker,* 2016-Ohio-1353, at ¶ 21.

{¶21} There was evidence that Mr. Rowe lived at the residence, and there was also evidence tying Mr. Rowe to the bedroom where the heroin and firearm were found. *See Tucker* at ¶ 24 (summarizing cases where constructive possession of a firearm was established). Thus, there was circumstantial evidence that Mr. Rowe knowingly exercised dominion and control over the heroin and firearm. *Ibrahim* at ¶ 8; *Tucker* at ¶ 21. The only document admitted into evidence found in the bedroom was a car rental lease with Mr. Rowe's mother's name on it. Mr. Rowe admittedly sold marijuana out of the residence and, according to Detective Harvey's source, lived at the residence. Photographs of Mr. Rowe were found in the residence. Mr. Rowe was found on the roof, which was accessed by going through the attic, which was reached

through the bedroom containing the heroin and firearm. Mr. Rowe himself admitted to going through the bedroom, to the attic, in order to escape through the roof. Thus, there was evidence that Mr. Rowe had recently accessed the bedroom and had knowledge of how to access the attic and roof. There was also evidence that Mr. Rowe opted to flee while the other two individuals remained on the couch in the living room. *See State v. Clayton,* 9th Dist. Summit No. 27352, 2015-Ohio-498, ¶ 17 (noting flight can be evidence of consciousness of guilt). And while there were two other individuals found at the residence at the time, there was evidence that at least Mr. Rowe's brother was just visiting him. Thus, we conclude that the State presented sufficient evidence, if believed, whereby a jury could find that Mr. Rowe constructively possessed the heroin and firearm.

{¶22} We overrule Mr. Rowe's second assignment of error.

## ASSIGNMENT OF ERROR I

MR. ROWE'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} Mr. Rowe asserts in his first assignment of error that his convictions for possession of heroin and having weapons while under disability were against the manifest weight of the evidence. He does not appear to challenge his conviction for the possession of marijuana.

{¶24} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶25}** Much of Mr. Rowe's attention in his merit brief is focused on attacking the credibility of witnesses involved in the November 24, 2012 incident. However, Mr. Rowe was not convicted of any offense related to that incident. Accordingly, we again limit our discussion to his convictions for possession of heroin and having weapons while under disability that arose out of the February 11, 2013 search of the residence on Maxen Drive.

**{¶26}** Mr. Rowe's argument is essentially that the weight of the evidence supports the conclusion that someone other than Mr. Rowe possessed the heroin and the firearm. At trial, during the cross-examination of Detective Harvey, Mr. Rowe's counsel submitted as evidence an indictment naming Mr. Rowe's brother, as well as a plea entered by Mr. Rowe's brother, to possession of heroin and possession of marijuana. On appeal, Mr. Rowe asserts that the heroin mentioned in the indictment and plea was the same heroin found at the Maxen Drive residence. Thus, according to Mr. Rowe, if his brother possessed the heroin, Mr. Rowe could not have.

**{¶27}** First, we note that Mr. Rowe has cited no law that would support that proposition. *See State v. Deem,* 9th Dist. Summit No. 26761, 2013-Ohio-5227, ¶ 10, quoting *State v. Figueroa,* 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8. (noting that "[p]ossession of a drug includes possessing individually or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others.") Second, the record does not factually support Mr. Rowe's claim. The indictment involving Mr. Rowe's brother lists May 9, 2013, as the date that Mr. Rowe's brother possessed the heroin. The search of the residence on Maxen Drive occurred on February 11, 2013, and that heroin was confiscated by the police, and submitted into evidence at trial. Thus, the heroin for which Mr. Rowe's brother was indicted for possessing could not be the same heroin as that found during the search of the Maxen Drive residence.

{¶28} Mr. Rowe additionally argues that the weight of the evidence supported that the firearm and heroin belonged to Mr. Phelps and not to Mr. Rowe. Thus, Mr. Rowe essentially asserts that his testimony was more credible, than that presented by the State's witnesses. Mr. Rowe posits that his version of events is more credible because it is more likely that Mr. Phelps, who was a known heroin dealer, and who had just left the property, hid the heroin and firearm at the Maxen Drive residence after he realized police were in the area, than that Mr. Rowe, who had no prior known association with heroin, possessed the heroin and firearm. This Court recognizes that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." (Internal quotations and citation omitted.) *State v. Tabassum,* 9th Dist. Summit No. 25568, 2011-Ohio-6790, ¶ 26. "It is well-settled that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citation omitted.) *State v. Bulls,* 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 24. We note that the jury was aware that Mr. Phelps was stopped with over $5,000 on his person; an amount that Detective Harvey testified would have been within the range for the street value of the amount of heroin found in the Maxen Drive residence. Thus, it would not have been unreasonable, in light of the other evidence discussed above, for the jury to conclude that Mr. Rowe possessed the heroin and firearm. The jury was also aware of Mr. Rowe's prior convictions, which also could have altered the jury's perception of Mr. Rowe's credibility. Accordingly, after thoroughly and independently reviewing the record, and given Mr. Rowe's arguments on appeal, we cannot say the jury lost its way in finding him guilty of possession of heroin and having weapons while under disability.

{¶29} Mr. Rowe's first assignment of error is overruled.

III.

**{¶30}** Mr. Rowe's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
CELEBREZZE, J.
CONCUR.

(Celebrezze, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.