[Cite as *State v. Reeves*, 2014-Ohio-282.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.   26984 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEANGELO R. REEVES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 12 05 1539 |

DECISION AND JOURNAL ENTRY

Dated: January 29, 2014

WHITMORE, Judge.

{¶1}   Appellant, Deangelo Reeves, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}   Detective Tim Harvey, with the Akron Police Department Street Narcotic Uniform Detail ("SNUD"), received information that drugs were being sold from an apartment at 771 East Exchange Street.  A confidential informant described the seller's height and weight and told Detective Harvey that the seller's nickname was "O" or "OC."  After an investigation, Detective Harvey identified a vehicle of interest as a Mazda with Illinois plates.

{¶3}   On May 29, 2012, having secured a search warrant, Detective Harvey noticed the Mazda in the apartment's parking lot.  When the Mazda left the apartment, the police pulled it over and discovered Reeves driving.  Reeves had a key to the apartment, his cell phone, and $1,560 in cash on his person.  Reeves was transported back to the apartment, and the police

executed the search warrant. In their search, the police recovered a bindle of heroin in the bedroom closet and three handguns under the mattress in the bedroom.

{¶4} Reeves was charged with possession of heroin, in violation of R.C. 2925.11(A), (C)(6), a felony of the fifth degree, and having weapons while under a disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree. Additionally, Reeves' indictment contained a forfeiture specification for the $1,560 in cash found on his person. A jury found Reeves guilty of all charges and found that the money was subject to forfeiture. Reeves now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND REEVES GUILTY OF POSSESSION OF HEROIN AND HAVING WEAPONS WHILE UNDER DISABILITY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

{¶5} In his first assignment of error, Reeves argues that his convictions are not supported by sufficient evidence. We disagree.

{¶6} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶7} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶8} R.C. 2925.11(A), (C)(6) prohibits a person from knowingly obtaining, possessing, or using heroin, a controlled substance. R.C. 2923.13 prohibits a person from knowingly acquiring, having, carrying, or using a firearm if he or she has a felony drug conviction.

{¶9} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(D)(1). "Ownership of the drugs need not be established for constructive possession." *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16.

{¶11} "[A] person may knowingly possess a substance or object through either actual or constructive possession." *Id*. at ¶ 16. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Ibrahim*, 9th Dist. Medina No. 12CA0048-

M, 2013-Ohio-983, ¶ 8, quoting *State v. Reis*, 9th Dist. Summit No. 26237, 2012-Ohio-2482, ¶ 7. "Possession of a drug includes possessing individually or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." *State v. Deem*, 9th Dist. Summit No. 26761, 2013-Ohio-5227, ¶ 10, quoting *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8.

**{¶12}** Reeves argues that his convictions are not supported by sufficient evidence because "there was no evidence that [he] ever knowingly obtained, possessed or used heroin [and] [ ] there [was no] evidence that [he] knowingly acquired[ or] carried a firearm on or about May 29, 2012."

**{¶13}** Detective Harvey testified that he had received information that drugs were being sold out of an apartment located at 771 East Exchange Street, and an investigation ensued. According to Detective Harvey, a confidential informant purchased drugs from the apartment in question and provided the police with a description and nickname of the seller. Detective Harvey agreed that the seller's nickname was either "O" or "OC" and that he was described as a black male, "[n]o shorter than 5'9", [and] no taller than six foot, weigh[ing] no less than 175 but no more than 190 pounds." Through his investigation, Detective Harvey also identified a black 2011 Mazda 3 rental car with Illinois plates as a vehicle of interest. Armed with this information, Detective Harvey secured a search warrant for the apartment.

**{¶14}** On May 29, 2012, while conducting pre-raid surveillance, Detective Harvey noticed the Mazda in the apartment's parking lot. He proceeded to park a short distance down Exchange Street and waited for the vehicle to leave. Approximately thirty minutes later, Detective Harvey saw the Mazda drive past him on Exchange Street, and he radioed for Officer Alan Jones to stop the car. According to Detective Harvey, it is "standard protocol" to wait for a

suspect to leave the premises before executing a search warrant. Detective Harvey testified that it is safer, for everyone involved, to stop the suspect after he leaves the property and return him to the premises while the officers execute the search warrant.

{¶15} Officer Jones testified that, on May 29, 2012, he was part of a group executing a search warrant on 771 East Exchange Street. He was waiting in a marked police car just outside the area while Detective Harvey conducted pre-raid surveillance in an unmarked car. Officer Jones testified that he received a radio call from Detective Harvey requesting that he stop the Mazda. Officer Jones stated that he stopped the Mazda and informed the driver, whom he identified as Reeves, of the reason for the stop. Reeves was then placed in handcuffs and searched. Officer Jones found a key to the apartment, a cell phone, and $1,560 in cash. According to Officer Jones, Reeves denied that he stayed at the apartment, but did admit that the key would open the apartment. Officer Jones testified that he asked Reeves various questions to determine whether it was safe for the officers to conduct a search of the apartment, e.g., whether anyone was in the apartment, and whether there were dogs or guns inside. Officer Jones then transported Reeves back to the apartment, and the search warrant was executed. Officer Jones testified that the police gained entry into the apartment using Reeves' key.

{¶16} Inside the apartment, the police found Jessica Brazile. Officer Jones testified that he spoke with Brazile while the other officers conducted a search of the apartment. Officer Jones described Brazile as mentally challenged. According to Officer Jones, Brazile identified Reeves as her cousin and said that he, and another cousin, McArthur Terrell, stayed at the apartment with her. Detective Harvey testified that Brazile informed him that Reeves and Terrell would give her money to leave so that they could use the apartment and that Reeves and Terrell

put guns under the bed. According to Detective Harvey, Reeves admitted that he stayed at the apartment from time to time.

{¶17} A search of the small, one bedroom apartment revealed drug paraphernalia throughout, three handguns under the mattress in the bedroom, and a bindle of heroin in the bedroom closet. Additionally, officers found paperwork addressed to Reeves in the kitchen. Specifically, officers found court papers dated January 18, 2012, and papers from Oriana House dated March 30, 2012.

{¶18} Detective Harvey testified that several text messages were sent from and received by Reeves' cell phone on May 29, 2012, the day of the search. According to Detective Harvey, these messages were indicative of drug trafficking. Detective Harvey testified that one of the text messages was from a person unhappy about the quality of drugs purchased from Reeves. The second text message, according to Detective Harvey, was from a person who wanted to purchase $40 worth of heroin from Reeves and wanted to get high at the apartment before leaving. A reply text message was sent from Reeves' phone saying, "Okay." Detective Harvey also testified that he was able to determine Reeves' nickname was "O" through his cell phone records.

{¶19} Viewing the evidence in a light most favorable to the prosecution, we conclude the evidence is sufficient to support Reeves' convictions. According to Detective Harvey, Brazile told him that Reeves and Terrell were dealing drugs from the apartment and had put the guns under the mattress in the bedroom. Detective Harvey testified that Brazile told him that Reeves would give her money to leave the apartment so that he could use it. Reeves had a key to the apartment and admitted to staying there from time to time. Detective Harvey further testified that a confidential informant had purchased drugs at the apartment from a black male nicknamed

"O" or "OC" and that he was able to identify Reeves' nickname as "O" from his cell phone records.

**{¶20}** Reeves' first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

REEVES' CONVICTIONS FOR POSSESSION OF HEROIN AND HAVING WEAPONS WHILE UNDER DISABILITY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his second assignment of error, Reeves argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶22} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶23} Reeves argues that the weight of the evidence supports a finding that the heroin in the bedroom closet belonged to Brazile because she had an opiate addiction and the bedroom belonged to her. Further, Reeves argues that the weight of the evidence does not support a finding that he had constructive possession of the guns.

{¶24} Detective Harvey testified that Oxycontin and Percocet were found in Brazile's purse. According to Detective Harvey, Oxycontin, Percocet, and heroin are opiates. Detective Harvey testified that it is not uncommon for someone to become addicted to Oxycontin or Percocet and then turn to heroin when their prescription runs out. Detective Harvey further testified that he did not investigate whether Brazile had a prescription for the pills found in her purse and that it was possible she had an opiate addiction.

{¶25} Detective Harvey described the apartment as a small one bedroom apartment. He testified that there was evidence of heroin use all over the apartment. In the kitchen, officers found a digital scale, razor blade, sifter, a spoon with heroin residue on it, and cups of rice. According to Detective Harvey, rice is commonly used to keep heroin from becoming moist and the remaining items are commonly used in "cutting up narcotics." By mixing heroin with a cutting agent, like baby laxative, the purity of the heroin is reduced, but the total amount available for sale or use is increased. Lottery tickets were also discovered in the kitchen. Detective Harvey testified that lottery tickets are commonly used as packing material for heroin and packets of heroin are called "bindles." In the kitchen trash, the officers found "empty bindle wrappers and drug baggies."

{¶26} In the bathroom, officers found an empty bindle and a sandwich bag with heroin residue on it. The officers discovered two more digital scales, one in the dining room and one in the bedroom. In the bedroom, the officers recovered three handguns from under the mattress,

and, on top of the lone dresser, officers found a box containing empty Suboxone packages and snorting straws. Detective Todd Sinsley testified that Suboxone is used as a "step[-]down for heroin" and is usually provided by a doctor or a treatment center. In the bedroom closet, the police recovered a bindle of heroin and empty bindle wrappers.

{¶27} There is no dispute that Brazile lived in the apartment. Detective Harvey testified that the photograph of the bedroom dresser showed women's clothing in the open, top dresser drawer. However, Detectives Harvey and Sinsley also testified that not all of the clothing in the bedroom belonged to a female. In one of the photographs of the bedroom, Detective Harvey identified a man's shirt on the floor by the dresser. Detective Harvey testified that the bedroom was probably shared and that Brazile told him that Reeves and Terrell would give her money to leave the apartment so that they could use it. Additionally, both detectives identified men's deodorant in the photograph of the bathroom.

{¶28} There was evidence that Brazile was not the only person to occupy that apartment. In addition to Detective Harvey's testimony that Brazile said Reeves and Terrell would stay at the apartment, Reeves himself told Detective Harvey that he stayed at the apartment from time to time. Reeves had a key to the apartment and documents addressed to Reeves were found in the kitchen. Further, when Reeves was arrested on May 29, 2012, he provided the East Exchange Street apartment as his home address to the booking officer.

{¶29} Reeves argues that on May 29, 2012, he was serving a sentence at Oriana House and was not living at the apartment. Reeves further argues that the physical description given to Detective Harvey by the confidential informant does not accurately describe his height and weight. Detective Harvey testified that Reeves might have been sleeping at Oriana House, but he was spending time at the East Exchange Street apartment during the day. According to

Detective Harvey, the confidential informant purchased drugs from a man nicknamed "O" or "OC" in the afternoon, five days before the raid. Detective Harvey testified that he confirmed Reeves' nickname as "O" through his phone records. While Reeves is taller and heavier than the description provided to Detective Harvey by the confidential informant, Detective Harvey testified that physical descriptions, in his experience, are usually wrong.

**{¶30}** Detective Harvey testified that they had identified a target vehicle as a Mazda with Illinois plates. The day of the search, Detective Harvey saw the vehicle in the apartment's parking lot and waited for it to leave. When Detective Harvey saw the target vehicle leave the apartment, Reeves was found driving and had a key to the apartment on him. Moreover, according to Detective Harvey, Brazile said that Reeves and Terrell used the apartment to sell drugs and that the guns belonged to them.

**{¶31}** After reviewing the record, we cannot conclude that the trier of fact clearly lost its way in finding that Reeves had joint, constructive possession of the heroin and guns in the apartment. *See Otten*, 33 Ohio App.3d at 340. Reeves' second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ORDERING THAT REEVES WAS SUBJECT TO FORFEITURE OF $1,560.00 WHEN IT DID NOT CONDUCT A PROPORTIONALITY REVIEW UNDER R.C. 2981.04(B) AND R.C. 2981.09(A).

{¶32} In his third assignment of error, Reeves argues that the court erred in failing to determine whether the forfeiture was disproportionate to the severity of the offense. We disagree.

{¶33} R.C. 2981.05(D) provides that a trial court "shall issue a civil forfeiture order if it determines that the prosecutor has proved by a preponderance of the evidence that the property is subject to forfeiture under section 2981.02 of the Revised Code, and, after a proportionality

review under section 2981.09 of the Revised Code when relevant * * *."  R.C. 2981.09(B)

specifies that "any proceeds obtained from the offense are not subject to proportionality review *

* *."

{¶34}  Reeves' forfeiture specification sought forfeiture of $1,560 in cash and alleged

that it was proceeds of criminal activity.  The jury found that the prosecutor met its burden by a

preponderance of the evidence, and the court issued an order of forfeiture.  Because the property

forfeited was proceeds, it was not subject to the proportionality review under R.C. 2981.09.  *See*

*Dayton Police Dept. v. Thompson*, 2d Dist. Montgomery No. 24790, 2012-Ohio-2660, ¶ 11-16

(no proportionality review required when $3,808 in cash found on defendant was subject to

forfeiture as proceeds from a criminal offense).

{¶35}  Reeves' third assignment of error is without merit and is overruled.

### III

{¶36}  Reeves' assignments of error are overruled.  The judgment of the Summit County

Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common

Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy

of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of

judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.