[Cite as *State v. Tucker*, 2016-Ohio-1353.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 13CA010339 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KAREEM L. TUCKER | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 12CR084231 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2016

MOORE, Judge.

{¶1}    Appellant, Kareem Tucker, appeals his convictions by the Lorain County Court of Common Pleas.  This Court affirms in part and reverses in part.

I.

{¶2}    In the fall of 2011, a confidential informant working for the Lorain Police Department purchased crack cocaine in a studio apartment on Oberlin Road on three occasions. After the controlled buys were completed, police executed a search warrant of the residence, where they found three guns, a cache of money and crack cocaine, and household items used to deal crack cocaine.  Mr. Tucker had been identified by the confidential informant and by the audio recording of the controlled buys.  He was charged with four counts of trafficking in drugs in violation of R.C. 2925.03(A)(2); possession of drugs in violation of R.C. 2925.11(A); two counts of having weapons under disability in violation of R.C. 2923.13(A)(2); possessing criminal tools in violation of R.C. 2923.24(A); and use or possession of drug paraphernalia in

violation of R.C. 2925.14(C)(1). Two firearm specifications were dismissed during the course of the proceedings.

{¶3}   Mr. Tucker filed numerous documents on his own behalf maintaining that he was not subject to the jurisdiction of the Court and asserting his status as a sovereign citizen of "Moorish Native American" heritage. Mr. Tucker continued to make these assertions in court during pretrial appearances. He requested – then asked the court to remove – appointed counsel. Ultimately, the Court permitted him to represent himself when the case proceeded to a jury trial. The jury found him guilty of all of the charges against him, and the trial court sentenced him to a total prison term of thirteen years and four months, with the prison sentence on all charges running consecutively to each other and to the charges in another case. Mr. Tucker appealed. His five assignments of error are rearranged for purposes of resolution.

II.

### ASSIGNMENT OF ERROR II

[MR.] TUCKER WAS ERRONEOUSLY PERMITTED TO STAND TRIAL WHEN THE RECORD REFLECT[S] THAT [MR.] TUCKER DID NOT UNDERSTAND THE PROCEEDINGS AGAINST HIM AND LACKED THE CAPACITY TO CONSULT WITH HIS LAWYER WITH A RATIONAL DEGREE OF UNDERSTANDING, IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION[.]

{¶4}   Mr. Tucker's second assignment of error is that the trial court abused its discretion by failing to sua sponte order Mr. Tucker to undergo a competency evaluation before trial. We disagree.

{¶5}   "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). The measure of competency in this context is whether a defendant "has sufficient

present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). "[W]hen there is evidence to create a sufficient doubt of a defendant's competency to stand trial, a trial court may be required to conduct further inquiry on the question and a trial court must always be alert to circumstances suggesting that the accused may be incompetent to stand trial." *State v. Corethers*, 90 Ohio App.3d 428, 433 (8th Dist.1993), citing *Drope v. Missouri*, 420 U.S. 162, 177, 180 (1975). "An evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173 (2002), paragraph two of the syllabus.

{¶6} R.C. 2945.37 addresses the competency of criminal defendants in Ohio. It provides:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.
>
> * * *
>
> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code

R.C. 2945.37(B), (G). When a trial court is confronted with whether to order a competency hearing sua sponte, "relevant considerations include: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein*, 40

Ohio App.3d 57, 60-61 (8th Dist.1987); *Elyria v. Bozman*, 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 7. *See also State v. Spivey*, 81 Ohio St.3d 405, 410 (1998) (noting that at the plea stage, a trial court is not required to order a competency hearing sua sponte if the record does not reveal indicia of incompetency).

{¶7} Mr. Tucker urges us to conclude that the trial court was required to order a competency hearing based upon his lengthy pretrial colloquies with the trial court in which he rejected the jurisdiction of the court, maintained that the case was a commercial matter and that the trial court could not exercise authority over his "trust," refused to "contract" with the judge, and demanded that the judge place his oath of office on the record. Filings by Mr. Tucker confirm that his statements, although apparently bizarre, are consistent with the political philosophy that he espouses – that he is a "Moorish Native American," a sovereign individual not subject to the laws or to government institutions. As one court has recognized, individuals who espouse such political philosophies "cling[] doggedly to the sovereign citizen script * * *. The colloquy with the court is often characterized by frequent interruptions by the defendant, who attempts to talk over the judge. For the most part, the defendant's statements to the Court are gibberish." *United States v. Cartman*, N.D.Ga. No. 1:10-cr-512-01-JEC, 2013 WL 2445158, *2 (June 5, 2013).

{¶8} Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency that require a hearing. "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him." *United States v. Gooch*, 595 Fed.Appx. 524, 527 (6th Cir.2014). *Accord United States v. Landers*, 564 F.3d 1217, 1222 (10th Cir.2009) (the defendant's "bizarre

behavior" demonstrated not that he was incompetent to stand trial, but that he was "an anti-government protestor * * * engaged in obstructionism[.]"); *United States v. Oehler*, 116 Fed.Appx. 43, 45 (8th Cir.2004) (concluding that the defendant's "nonsensical statements were simply tax protester rhetoric" and noting that the magistrate had found the defendant "was educated and intelligent, understood the charges against him, had a basic understanding of the criminal process, and had the ability to communicate effectively * * *."); *United States v. James*, 328 F.3d 953, 955 (7th Cir.2003) (the fact that a defendant advances unusual political beliefs does not "imply mental instability or concrete intellect * * * so deficient that trial is impossible.").

**{¶9}** It is worth noting that during the pretrial proceedings, Mr. Tucker opposed two motions made by the State, prevailing in his arguments on one of them. Although he maintained his anti-government rhetoric, Mr. Tucker participated in the proceedings. Given all of Mr. Tucker's statements in their context within the pretrial proceedings, we cannot conclude that there was sufficient indicia of incompetency to require the trial court to sua sponte order a competency evaluation. Mr. Tucker's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

[MR.] TUCKER'S WAIVER OF COUNSEL WAS NOT KNOWING AND INTELLIGENT WHEN HE DID NOT UNDERSTAND THE FUNDAMENTAL NATURE OF THE PROCEEDINGS AGAINST HIM, IN VIOLATION OF HIS RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION[.]

**{¶10}** Mr. Tucker's first assignment of error is that the trial court erred by allowing him to proceed pro se because he did not knowingly, intelligently, and voluntarily waive his right to counsel. We do not agree.

{¶11} The Sixth Amendment guarantees criminal defendants not only the right to counsel, but also the right to elect self-representation instead. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus. As Crim.R. 44(A) explains:

> Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.

There is no formula or script that a trial court must follow in every case in order to comport with the requirements of the Sixth Amendment. *State v. Schleiger*, 141 Ohio.St.3d 67, 2014-Ohio-3970, ¶ 19, quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). A waiver of counsel is intelligent, for example, when a defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

{¶12} When a defendant waives the right to be represented by counsel, the trial court must substantially comply with Crim.R. 44(A) "by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39, citing *Gibson* at paragraph two of the syllabus. "[A]n inquiry as to the dangers of self-representation 'must be made, even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases.'" *State v. Weiss*, 92 Ohio App.3d 681, 685 (9th Dist.1993). Noting that this Court looks to the totality of the circumstances surrounding a waiver of the right to counsel, we have recently summarized our review as follows:

> "While no one factor is dispositive, the trial court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating

circumstances." *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶ 13. The trial court, however, does not need to "undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defenses or mitigating circumstances," and, instead "a broader discussion of defenses and mitigating circumstances as applicable to the pending charges is sufficient." *State v. Ragle*, 9th Dist. Summit No. 22137, 2005-Ohio-590, ¶ 12; *Trikilis* at ¶ 13. "A court may also consider various other factors, including the defendant's age, education, and legal experience." *Trikilis* at ¶ 13.

*State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12. *See also State v. Herrington*, 9th Dist. Summit No. 25150, 2010-Ohio-6455, ¶ 34.

{¶13} We must acknowledge from the outset that this case does not present a textbook example of the colloquy between a trial court and defendant on the waiver of counsel. Indeed, as one court has recognized in similar circumstances, cases discussing waiver of counsel and self-representation "presuppose[] a cooperative defendant willing to engage in reciprocal dialogue with the court" rather than "an uncooperative defendant [who] has refused to accept appointed counsel or engage in a colloquy with the court." *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008). Another court has observed that adherents to Mr. Tucker's political ideology often frustrate the efforts of trial court judges in this regard:

> On the matter of legal representation, the defendant will often refuse to cooperate with, or even speak to, his appointed counsel and will sometimes protest that he never authorized appointment of counsel. Yet, when the Court attempts to engage the defendant to determine whether the latter wants new counsel or wants to represent himself, the non-responsive dialogue begins, with the defendant refusing to affirmatively indicate his waiver of counsel or to answer in any coherent way as to how he wishes to proceed.

*United States v. Perkins*, N.D.Ga. No. 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, *2 (July 23, 2013).

{¶14} In this case, Mr. Tucker repeatedly frustrated the court's attempt to engage him in a dialogue about his waiver by refusing to answer questions, posing objections to the legitimacy of the court and the proceedings, and demanding the trial court's oath of office. Nonetheless, the

record demonstrates that the trial court engaged in a colloquy that was appropriate given the totality of the circumstances, and Mr. Tucker, although obstinate, knowingly, voluntarily, and intelligently waived the right to counsel.

{¶15} The trial court substantially complied with Crim.R. 44(A), persisting in its inquiry about the right to counsel over three separate court dates and despite Mr. Tucker's attempts to sidetrack the discussion. The trial court candidly expressed concern about Mr. Tucker's ability to represent himself at trial, but pursued a line of questioning consistent with its obligation to assess Mr. Tucker's waiver:

> In the past, sir, I have asked you a series of questions to determine whether you are capable and qualified to represent yourself in this case, these cases. And, although you've in the past indicated to me a lack of sufficient education and training to be competent at representing yourself, that doesn't preclude you from being able to do so.
>
> I still want to raise those issues with you again, because each time we confront this issue, I keep on hoping and praying that you will snap out of it. You can either snap out of it before you start serving more time in prison or continue the process that you've been following for the last nine months that led you directly into a 20-some-year prison sentence.
>
> My guess is that at some time or another at the institution you're going to realize you've been making a lot of mistakes. But the fact of the matter is, in order for me to at least satisfy my statutory responsibilities, I have to ask you some questions about your education, training, and experience to determine whether you are truly capable of representing yourself in these matters.

The trial court then inquired whether Mr. Tucker understood that he had the right to counsel, attempted to identify areas in which Mr. Tucker had unanswered questions, and summarized the difficulties that a pro se individual may encounter at trial. The trial court informed Mr. Tucker that he would be required to comply with the rules of evidence and procedure applicable to attorneys; that as judge, he could not offer assistance during trial; that he would not interrupt the trial if Mr. Tucker became confused; that the right to represent himself could be revoked; and

that disruptive defendants could be removed from the courtroom. The trial court also explained the potential prison sentence that Mr. Tucker faced.

{¶16} Throughout the trial court's inquiry, Mr. Tucker persisted in a course of evasion and delay. Nonetheless, our review of the record leads us to conclude that Mr. Tucker engaged the trial court and participated in the proceedings in a manner that is sufficient to demonstrate that he knowingly, intelligently, and voluntarily waived the right to counsel. Mr. Tucker resolutely insisted that he wanted to proceed without an attorney, and although he told the trial court that he did not want to answer any questions, he participated in the pretrial proceedings by opposing two motions and prevailing on one of them. At a later date, Mr. Tucker affirmed that he understood he could retain his own attorney, read from the Sixth Amendment, and moved to dismiss the charges against him. When the trial court inquired further, Mr. Tucker asserted the right to counsel, specified that he would prefer not to work with two particular attorneys, and consented to a continuance.

{¶17} During his third pretrial appearance, Mr. Tucker asked to proceed without counsel, citing differences with his attorney. Although those differences appear to have been related to Mr. Tucker's political views, it is apparent from the record that the disagreement was real and that Mr. Tucker was adamant in his decision. Mr. Tucker stated that he understood what he was doing. When the trial court stated, "I'm just trying to make sure that you have complete knowledge and information about the potential consequences * * * of trying this case and losing," Mr. Tucker replied, "Well, obviously, I do if I don't want this man to represent me." Mr. Tucker questioned the knowledge and experience of his appointed attorney, and he affirmed that he was self-educated in the law. After the trial court informed him about how trial would proceed, Mr. Tucker reaffirmed his desire to represent himself.

{¶18} On the record before us, we conclude that the trial court substantially complied with Crim.R. 44(A) and that Mr. Tucker knowingly, voluntarily, and intelligently waived his right to counsel. Mr. Tucker's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT VIOLATED [MR.] TUCKER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, THE COURT FOUND [MR.] TUCKER GUILTY OF HAVING WEAPONS WHILE UNDER A DISABILITY IN VIOLATION OF THE DUE PROCESS CLAUSES TO THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION[.]

{¶19} Mr. Tucker's third assignment of error is that his conviction for having weapons while under disability is not supported by sufficient evidence. Specifically, he has argued that the State did not establish a connection between him and the firearms that were seized. We agree.

{¶20} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, at ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶21} R.C. 2923.13(A)(2), which prohibits having weapons while under disability, provides that "[u]nless relieved from disability under operation of law or legal process, no person

shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence." A person must actually or constructively possess a firearm in order to "have" it for purposes of R.C. 2923.13(A)(2). *State v. Najeway*, 9th Dist. Summit No. 21264, 2003-Ohio-3154, ¶ 10. "Constructive possession has been defined as 'knowingly [exercising] dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Blue*, 9th Dist. Lorain No. 10CA009765, 2011-Ohio-511, ¶ 17, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Ownership does not need to be proven, and constructive possession may be established by circumstantial evidence. *Blue* at ¶ 17.

{¶22} This Court has noted that access to a weapon can establish possession. *Najeway* at ¶ 10. Nonetheless, as *Najeway* illustrates, this principle does not stand in a vacuum. In that case, for example, this Court concluded that there was sufficient evidence that the defendant had a firearm based not only on the fact that firearms were found in his residence, but on that fact coupled with the location of the guns in a space where the defendant kept his belongings, the proximity of the guns to other items identified with the defendant, and the corroborating testimony of the other resident of the house. *Id*. at ¶ 12-13.

{¶23} Other cases illustrate how we have applied this principle. In *State v. Wyatt*, 9th Dist. Summit No. 22070, 2004-Ohio-6546, this Court concluded that sufficient evidence supported a conviction for having a weapon under disability when the defendant shared the house where the gun was found with his girlfriend and no other adults, and the gun was found in the master bedroom. *Id*. at ¶ 26. In that case, however, the defendant's girlfriend testified that the gun did not belong to her and that no one else had access to the master bedroom. *Id*. In addition, a police officer testified that the defendant's children told him, "That's Daddy's gun."

*Id*. In *State v. Martinsons*, 9th Dist. Medina Nos. 2708-M, 2713-M, 1998 WL 318526, this Court reached the same result. In that case, police seized a gun from the basement bathroom closet of the defendant's parents' home where he resided. *Id*. at * 3. As in *Wyatt*, however, other testimony established a connection between the defendant and the weapon: the defendant himself testified that the gun belonged to him. *Id.*

{¶24} Other districts have employed a similar analysis. *See*, *e.g.*, *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 120-122 (constructive possession was demonstrated when firearms were found along with drugs in a storage unit rented by the defendant after a search warrant had been executed at his residence); *State v. Curry*, 2d Dist. Montgomery No. 25384, 2013-Ohio-5454, ¶ 20-23 (constructive possession was demonstrated when evidence showed that the defendant had possession and control over both units of a duplex and was aware that firearms were inside); *State v. Washington*, 8th Dist. Cuyahoga Nos. 98882, 98883, 2013-Ohio-2904, ¶ 22-24 (sufficient evidence of constructive possession of a firearm existed when the defendant lived at the residence in question and had belongings there and the victim tied the defendant to the gun); *State v. Munn*, 6th Dist. Lucas No. L-08-1363, 2009-Ohio-5879, ¶ 47-48 (sufficient evidence of constructive possession existed where a firearm was found in a private area of a residence where the defendant had been seen, and the weapon was found in proximity to personal items and identifying documents related to the defendant).

{¶25} As these cases demonstrate, there must be some evidence from which the finder of fact can infer that the defendant possessed a firearm. In a different context, the Supreme Court has observed that the presence of contraband in a shared residence, without more, does not establish constructive possession by an individual defendant. *State v. Haynes*, 25 Ohio St.2d 264, 269-270 (1971). Addressing possession of narcotics, the Supreme Court observed:

The mere fact that one is the owner or lessee of premises upon which narcotics are found – where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily access[i]ble to all tenants – is not, without further evidence, sufficient to establish possession in the owner or lessee.

When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises.

Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt.

*Id.* at 270. *Accord State v. Burney*, 10th Dist. Franklin No. 11AP-1036, 2012-Ohio-3974, ¶ 21-32 (applying *Haynes* to possession of a firearm).

**{¶26}** Applying these principles to this case, we must conclude that the State did not present evidence that would allow the trier of fact to reasonably conclude beyond a reasonable doubt that Mr. Tucker "had" a firearm. Detective Christopher Colon testified that a confidential informant purchased drugs from Mr. Tucker at the apartment in question after arranging a controlled buy. When a search warrant was executed, police found three guns: two were in a closet, and one was next to a mattress on the floor. Mr. Tucker was not present, but another man was sleeping on the mattress next to the gun. A few documents bearing Mr. Tucker's name were found in the apartment, but there was no testimony placing their proximity to the firearms. Detective Dennis Camarillo testified that the residence was a studio style apartment consisting of a living room, kitchenette, bathroom, and closet. He recalled that the guns in the closet were found underneath some denim jeans. The State did not introduce any evidence establishing who rented the apartment or how many people resided there. The confidential informant testified that during one of the controlled buys, he saw a gun sitting between the living room and the kitchen,

and another male said, "I ought to shoot your ass[.]" He testified that it was "[n]ot Kareem [Tucker]" who made this statement.

{¶27} Even viewing this evidence in the light most favorable to the prosecution, as we must, the State did not produce sufficient evidence to establish beyond a reasonable doubt that Mr. Tucker "had" a weapon within the meaning of R.C. 2923.13(A)(2). Mr. Tucker's third assignment of error is sustained, and his conviction for having a weapon while under disability must be reversed.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT DENIED [MR.] TUCKER DUE PROCESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY RETALIATING AGAINST MR. TUCKER FOR EXERCISING HIS RIGHTS TO NOT PLEAD GUILTY AND HAVE HIS CASE TRIED BEFORE A JURY.

{¶28} Mr. Tucker's fourth assignment of error is that the trial court erred by retaliating against him at sentencing for exercising his right to a trial by jury. We agree.

{¶29} A criminal defendant is guaranteed the right to a trial by jury and cannot be punished for exercising that right by refusing a plea offer. *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. Any increase in sentencing that is attributable to the defendant's decision to take the case to trial is improper. *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 12 (4th Dist.). Consequently, a trial court must avoid the appearance that a sentence has been enhanced because the defendant chose to take the case to trial. *State v. Chapman*, 190 Ohio App.3d 528, 2010-Ohio-5924, ¶ 30 (9th Dist.), quoting *Morris* at ¶ 13. This Court has recognized that "[i]f a court makes statements from which it can be inferred that the sentence was increased due to a defendant's decision to proceed to trial, then that sentence must be vacated unless the record contains unequivocal evidence that the decision to proceed to trial

was not considered when sentencing the defendant." *State v. Turner*, 9th Dist. Summit No. 27210, 2014-Ohio-4460, ¶ 22, citing *Chapman* at ¶ 30.

**{¶30}** In *Turner*, the defendant's attorney engaged in plea negotiations in chambers, and the State placed a plea offer on the record before trial. *Id*. at ¶ 23. When the defendant's attorney indicated that the defendant wanted to go to trial, the judge warned him that "[w]hen someone refuses to accept responsibility and if the jury convicts them, I take that into account[.]" *Id*. The judge then told the defendant that he would probably receive community control if he pleaded guilty, but would go to prison if he was convicted after trial. *Id*. After the jury returned a guilty verdict, the trial court reiterated the comments made during plea negotiations, "[n]oting that [the defendant] claimed to accept responsibility only after being convicted[.]" *Id*. at ¶ 24. This Court concluded that "[t]he trial judge's statements both before the trial and at the sentencing hearing created the appearance that she sentenced [the defendant] to prison, rather than community control, because he chose to proceed to trial rather than accept a plea offer." *Id*. at ¶ 25. In sustaining the defendant's assignment of error, we noted that there was nothing in the record to rebut the inference that the trial court increased the sentence because the defendant chose to proceed to trial. *Id*.

**{¶31}** In this case, the trial court initiated plea negotiations. During one of Mr. Tucker's pretrial appearances, the trial court reiterated its previous offer:

> It would be my pleasure not to have to try the drug case or the gang case or the other two drug cases. I've put forth a great deal of effort, and I think, generally, to your benefit in that regard, and you've consistently rejected that.
>
> I am still of the mind-set that, if you wish to enter a plea with regard to the cases, the four cases pending against you, I will run them concurrent to the prison sentence I imposed against you at the conclusion of the last trial. And so you can cut your losses, if you wish, in that regard.

You have consistently and regularly rejected my offers in that regard, and so I am about 99 percent sure you're not going to accept my offer now, but I will keep it available for one more week, that if you enter pleas with regard to these four matters, I will run all sentences concurrent to the prison sentence you're presently serving, and then you can decide whether you wish to pursue an appeal in that case, as you see fit.

* * *

Oh, I realize I can't run that concurrent. I guess the best I can offer you, sir, is one additional year in prison for the firearm specification in Case No. 84231, and then run all other counts concurrent to what you're presently serving on the other case.

The trial court reiterated his offer at the next pretrial appearance. On the day of trial, after repeating the offer one final time, the trial court commented on the range of possible sentences that Mr. Tucker would face if he went to trial:

So, in this case we're trying today, the worst case scenario for [Mr. Tucker] would be 11, 14, 17, 18, and a half years.

* * *

So ultimately, with regard to the four cases, [Mr. Tucker] is facing as much as 28 and a half years additional time in prison in that regard.

Now, I would tell you that it's unlikely when I look at any of those cases that I would be likely - - I can't say it's unlikely that it would be likely, but it's unlikely that I would be imposing the maximum sentence. But, from the Court's perspective, certainly the Court could see that if there was an unsuccessful series of trials in these situations from [Mr. Tucker's] perspective and successful from the State's perspective, that at least he would be looking at somewhere around 15 additional years with regard to these various matters in that regard.

Be that as it may, I don't know what I would end up doing. It just depends. It may well be that the State ends up dismissing the lower level cases and just tries the gang case after this one is done.

Mr. Tucker rejected the offer, and the case proceeded to trial.

{¶32} During sentencing, the trial court commented on Mr. Tucker's conduct during trial and his refusal to "man up" for his actions:

[Mr. Tucker] took no actions, took no defenses. He was provided a note pad and pen to provide notes to assist him with regard to his defense, and ultimately refused to keep the pen. And I still look at that legal pad, and it's not got a single note on it.

Throughout the process, when everybody else was asked to rise to show the proper respect for the jury who had the fate of [Mr. Tucker] in their hands, he refused to do so.

It doesn't surprise the Court at this stage of our dealings that - - well, [Mr. Tucker] is not responsive to the Court's responses or position, but that is a relevant consideration by the Court when it comes to sentencing because, from the Court's perspective, the purposes of sentencing is to rehabilitate and correct. That's where he's going to go, the Department of Rehabilitation and Corrections. And the fact of the matter is, whether it be by way of plea, whether it be by a vigorous defense and a valid defense, or whether it be merely by showing the proper respect for the Court proceedings, those are elements that go into the Court's consideration as to what level of rehabilitation or sanction is necessary to get a chance that [Mr. Tucker] can be rehabilitated.

From the Court's perspective and this is followed by many of the Courts, not only in this county, but throughout the State of Ohio, strong defenses don't get long prison sentences. Weak defenses do because it shows an unwillingness to accept the consequences of prior actions, and, as a result, leads the Courts to conclude that greater time in prison is necessary to have a full rehabilitation.

That's all the more issue that we've got with regard to this Court's handling of Mr. Tucker's cases in the past. I have spent numerous possibly wasted moments and minutes and words and breath trying to get an individual to man up to his past conduct, and it never occurs. It's very frustrating from the Court's perspective; not that I lose sleep over it, because I don't take it personally.

The trial court then sentenced Mr. Tucker to consecutive prison terms totaling 13 years and 4 months, to be served consecutively with his other sentences.

{¶33} The statements made by the trial court in this case, both before and after trial, create an inference that Mr. Tucker's sentence was enhanced because he chose to take his case to trial. The record does not "contain[] unequivocal evidence that the decision to proceed to trial was not considered[.]" *Turner*, 2014-Ohio-4460, at ¶ 22. Indeed, as in *Turner*, the record is silent on this point. Accordingly, this Court must vacate Mr. Tucker's sentence and remand the matter for a new sentencing hearing.

{¶34} Mr. Tucker's fourth assignment of error is sustained.

**ASSIGNMENT OF ERROR V**

A TRIAL COURT COMMITS REVERSIBLE ERROR WHEN IT IMPOSES CONSECUTIVE PRISON TERMS WITHOUT SATISFYING THE STATUTORY MANDATES THAT AUTHORIZE CONSECUTIVE SENTENCES.

{¶35} Mr. Tucker's fifth assignment of error alleges error by the trial court in connection with sentencing. In light of our resolution of Mr. Tucker's fourth assignment of error, the fifth assignment of error is premature and will not be addressed.

III.

{¶36} Mr. Tucker's third and fourth assignments of error are sustained. His first and second assignments of error are overruled. His fifth assignment of error is premature. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and Mr. Tucker's sentence is vacated consistent with our resolution of his fourth assignment of error. This matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶37} I concur with the majority's resolution of Mr. Tucker's second assignment of error, but I respectfully dissent with respect to the remainder of the majority's opinion. Because I cannot conclude from the record before us that Mr. Tucker knowingly, intelligently, and voluntarily waived the right to counsel, I would sustain his first assignment of error, reverse the trial court's judgment, and remand this matter for further proceedings without reaching the merits of his third, fourth, and fifth assignments of error.

{¶38} My threshold disagreement is with the majority's conclusion that "Mr. Tucker engaged the trial court and participated in the proceedings in a manner that is sufficient to demonstrate that he knowingly, intelligently, and voluntarily waived the right to counsel." To be sure, the trial court made an admirable effort to inform Mr. Tucker of the risks regarding self-representation. Yet Mr. Tucker's responses fall short of demonstrating that the waiver was knowing, voluntary, and intelligent. The trial court inquired whether Mr. Tucker understood that

he had the right to counsel, and Mr. Tucker replied, "I don't understand anything. I just told you I'm not here to answer any questions." The trial court tried to determine whether Mr. Tucker had trouble understanding, but was met with refusal to respond. The trial court tried again, and met with no success.

{¶39} Mr. Tucker vacillated on whether he wanted counsel, and at later appearances, the same pattern repeated itself. When the trial court informed Mr. Tucker about the potential sentence that he faced, Mr. Tucker retorted, "Man, I'm not worried about that. * * * I'm not taking a risk." He further explained, "I understand what I'm doing. I'm not about to contract with this Court. That's what I'm not about to do." The trial court asked whether Mr. Tucker understood that appointed counsel had experience trying cases. Mr. Tucker disagreed. The trial court asked Mr. Tucker whether he understood that he would be required to comply with the rules of evidence and procedure applicable to attorneys. Mr. Tucker responded, "That don't apply to me." The trial court informed Mr. Tucker that as judge, he could not offer assistance during trial; that he would not interrupt the trial if Mr. Tucker because confused, that the right to represent himself could be revoked, and that disruptive defendants could be removed from the courtroom. Mr. Tucker simply replied, "I'm not about to have this man represent me."

{¶40} Mr. Tucker's responses to the trial court's questions were ambiguous at best and, at worst, may indicate that he did not appreciate the gravity of the proceedings against him. Faced with an inconclusive response to its inquiry, I believe that the trial court erred by accepting Mr. Tucker's waiver, discharging his attorney, and allowing him to represent himself at trial. As the majority opinion notes, federal courts have recognized that the precedent for analyzing whether a waiver of the right to counsel is knowing, voluntary, and intelligent is not ideally suited for a situation in which the defendant refuses to engage in the required colloquy.

By example, some of those courts also provide a useful answer to the dilemma that such cases pose. In *United States v. Perkins*, N.D.Ga. No 1:10-cr-97-1-JEC-LTW, 2013 WL 3820716, *2 (July 23, 2013), for example, the magistrate judge "[c]onclud[ed] that the defendant would never affirm that he waived his right to counsel * * * [and] directed that appointed counsel continue to represent him." In another case from the same district, the Court conducted a "lengthy, unsatisfying colloquy" regarding the right to counsel that resulted in the defendant steadfastly reiterating sovereign citizen rhetoric, and the trial court "concluded that the defendant's responses indicated either an insufficient understanding of the proceedings or the lack of a genuine desire to represent himself at a criminal trial." *United States v. Cartman*, N.D.Ga. No. 1:10-cr-512-01-JEC, 2013 WL 2445158, *6 (June 5, 2013).

{¶41} On the record before this Court, I cannot conclude that Mr. Tucker knowingly, intelligently, and voluntarily waived his right to counsel. As such, I believe that the trial court's appropriate course of action would have been to deny his request to proceed without counsel. I would sustain Mr. Tucker's first assignment of error and remand this matter for further proceedings. Accordingly, I respectfully dissent.

APPEARANCES:

ALLEN VENDER, Assistant State Public Defender, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.