[Cite as *State v. Gilcreast*, 2020-Ohio-1207.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

KEITH L. GILCREAST

    Appellant

C.A. No.     29347

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 02 11 3315(B)

DECISION AND JOURNAL ENTRY

Dated: March 31, 2020

TEODOSIO, Presiding Judge.

{¶1} Appellant, Keith L. Gilcreast, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms, but remands the matter back to the trial court for further proceedings.

I.

{¶2} A jury found Mr. Gilcreast guilty of felony murder along with a slew of other felonies and misdemeanors, and the trial court ultimately sentenced him to 46 years to life in prison. On appeal, this Court affirmed in part, but recognized that the trial court had not made the appropriate statutory findings necessary for consecutive sentences under R.C. 2929.14(E)(4), and thus reversed in part and remanded the matter back to the trial court for resentencing. *See State v. Gilcreast*, 9th Dist. Summit No. 21533, 2003-Ohio-7177, ¶ 66-67.

{¶3} Upon remand, the trial court held a hearing and listed its findings for consecutive sentences on the record, pursuant to R.C. 2929.14(E)(4). Mr. Gilcreast appealed from the court's

journal entry, but this Court dismissed the appeal for want of jurisdiction. *See State v. Gilcreast*, 9th Dist. Summit No. 22207 (Mar. 7, 2005). Although the trial court's order listed its findings for consecutive sentences, it was not a final, appealable order because the court failed to impose a sentence. *See id.* More than a decade later, Mr. Gilcreast filed a motion to "revise/correct" the trial court's entry, which the trial court denied. He appealed the court's decision, and this Court affirmed. *See State v. Gilcreast*, 9th Dist. Summit No. 27804, 2015-Ohio-4745.

{¶4} Mr. Gilcreast filed additional motions in the trial court, including a motion for resentencing, in which he argued that he was improperly notified of the consequences of violating post-release control and that his sentencing entry did not comply with the Supreme Court of Ohio's decision in *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927. The State agreed, and the trial court scheduled a hearing to properly inform Mr. Gilcreast of post-release control. *See* R.C. 2929.191(C). Mr. Gilcreast remained in prison, but he attended the hearing via video conferencing equipment. After speaking to two different attorneys, he elected to proceed pro se, and the trial court notified him of post-release control while standby counsel remained present in the courtroom.

{¶5} Mr. Gilcreast now appeals from the trial court's entry informing him of post-release control and raises five assignments of error for this Court's review.

II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT-APPELLANT BY NOT PROVIDING A MEANINGFUL DIALOG[UE] FROM WHICH THE COURT COULD CONCLUDE APPELLANT WAIVED HIS CONSTITUTIONAL[LY] PROTECTED RIGHT TO COUNSEL IN A VOLUNTARY, INTELLIGENT AND KNOWING MANNER.

{¶6} In his first assignment of error, Mr. Gilcreast argues that the trial court erred in failing to engage him in the proper colloquy to determine if his waiver of counsel was made knowingly, intelligently, and voluntarily. We disagree.

{¶7} "The Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.'" *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 22. *Accord* Article I, Section 10, Ohio Constitution. This constitutional right applies to all critical stages of criminal proceedings. *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 13. Because post-release control terms are part of the actual sentence, a resentencing hearing held for the limited purpose of properly imposing statutorily mandated post-release control is considered a critical stage of a criminal proceeding. *Id.* at ¶ 15. Although such hearings simply require the trial court to adhere to R.C. 2929.191, counsel's presence ensures that the court complies with the directives of the statute, that it does not exceed the scope of the hearing, that the defendant understands the imposition of post-release control, and that issues are properly preserved for appellate review. *Id.* at ¶ 16.

{¶8} The structure of the Sixth Amendment also implicitly provides a constitutional right to self-representation, as "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California*, 422 U.S. 806, 819-820 (1975). A defendant may proceed to defend himself without counsel when he knowingly, intelligently, and voluntarily elects to do so. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus.

{¶9} In order to establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *Id.* at paragraph two of the syllabus. While there is no formula or script

that a trial court must follow in every case in order to comport with the requirements of the Sixth Amendment, a waiver of counsel is intelligent, for example, when a defendant "'knows what he is doing and his choice is made with eyes open.'" *State v. Tucker*, 9th Dist. Lorain No. 13CA010339, 2016-Ohio-1353, ¶ 11, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). The Supreme Court of Ohio has stated that the information a defendant must possess in order to make an intelligent election will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. *See Schleiger* at ¶ 19. The high court further defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. *See id.* In determining the sufficiency of the trial court's inquiry, we review the totality of the circumstances. *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M and 04CA0097-M, 2005-Ohio-4266, ¶ 13. We review whether a defendant has made a knowing, intelligent, and voluntary waiver of his right to counsel de novo. *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, ¶ 5.

{¶10} Moreover, Crim.R. 44(C) provides that a "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." In "serious offense" cases, e.g., felony cases, the waiver shall also be in writing. Crim.R. 44(C); Crim.R. 2(C). Nevertheless, a written waiver of counsel is not a substitute for compliance with Crim.R. 44(C), which requires an oral waiver in open court before the judge, recorded in accordance with Crim.R. 22. *See Cuyahoga Falls v. Simich*, 5 Ohio App.3d 10, 12 (9th Dist.1982); *State v. Haag*, 49 Ohio App.2d 268, 270 (9th Dist.1976). *See also State v. Engle*, 2d Dist. Montgomery No. 22455, 2009-Ohio-1944, ¶ 63 (recognizing a fact-pattern in which several acknowledgments made in the written waiver of counsel were belied by the actual transcript of the hearing, and noting that the transcript

of the hearing necessarily governs); *State v. Tanner*, 9th Dist. Summit No. 24614, 2009-Ohio-3867, ¶ 9 ("Just because the written waiver said one thing does not mean that the [] court did not tell him about other consequences orally."). Trial courts need only demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his right to counsel, and the failure to file a written waiver is harmless error if substantial compliance is demonstrated. *Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, at ¶ 20, citing *Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, at ¶ 39.

{¶11} Upon review of the transcripts in this matter, we agree with the State's assessment that this case does not present us with a textbook example of a waiver-of-counsel colloquy between a defendant and the trial court, which "'presuppose[s] a cooperative defendant willing to engage in reciprocal dialogue with the court' rather than 'an uncooperative defendant [who] has refused to accept appointed counsel or engage in a colloquy with the court.'" *Tucker* at ¶ 13, quoting *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir.2008).

{¶12} At the short February 14, 2019, video conference hearing, both Mr. Gilcreast and his former counsel ("Mr. Swyrydenko") informed the trial court of a breakdown in communication between them. The court permitted Mr. Swyrydenko to withdraw as counsel, appointed another attorney ("Mr. Rilley") to represent Mr. Gilcreast, and then rescheduled the hearing until March 1, 2019.

{¶13} At the March 1, 2019, hearing, Mr. Gilcreast repeatedly frustrated the trial court's numerous attempts to engage him in a meaningful dialogue regarding his waiver of counsel. At the outset of the hearing, the trial court noted its understanding that Mr. Gilcreast no longer wished to have counsel represent him, but that he would instead be proceeding pro se. When asked if that was correct, Mr. Gilcreast ignored the court's question and instead began objecting to an

"application" filed on February 20, 2019. When the court reiterated that it would allow him to proceed pro se and asked if he understood, Mr. Gilcreast said he did not understand because the sound feed from the court was "breaking up." The court explained to Mr. Gilcreast that it was allowing Mr. Rilley to withdraw as counsel and would thus be permitting him to proceed pro se, but Mr. Gilcreast asked for the explanation to be repeated again due to supposed technical difficulties with the audio/video equipment. In response, the court took a short break and immediately contacted the prison regarding potential audio/video connection issues. An administrative professional at the prison ("M.S.") then entered Mr. Gilcreast's room and remained there with him, assuring the court that she could hear everything being said. The court again asked if Mr. Gilcreast wished to represent himself in the matter. Mr. Gilcreast claimed the court denied him "counsel of [his] choosing" but stated, "I'll definitely have to go ahead and represent myself." The court explained to Mr. Gilcreast that he could retain counsel of his choice, he could represent himself, or the court could appoint counsel, but that he did not have the right to appointed counsel of his choice. Mr. Gilcreast again informed the court of his decision to proceed pro se.

{¶14} When the court informed him that Mr. Rilley would simply remain present in the courtroom as "backup counsel" just in case Mr. Gilcreast decided he would like to speak to an attorney, Mr. Gilcreast began protesting Mr. Rilley's presence and said, "No, that's not okay." Although the court repeatedly assured Mr. Gilcreast that standby counsel would take no part in the hearing unless Mr. Gilcreast so desired, Mr. Gilcreast was persistent in his objections to Mr. Rilley's presence and maintained that he was "not comfortable" with anyone being there on his behalf. He further expressed his displeasure that the matter was supposed to be a "conference," yet it was proceeding instead as a "court hearing" or "court proceeding."

{¶15}  The court informed Mr. Gilcreast that the purpose of the hearing was to correct his post-release control, but it graciously permitted him to speak on the motion he filed.  Mr. Gilcreast made a variety of statements including (1) a request for compliance with *Grimes*, (2) a refusal to waive his "rights or remedies when it comes to rectifying or anything in parallel to due process," (3) a desire to be present with counsel of his choice, (4) an objection to the "entire video conference" because "notification is not on the system record," (5) a request for a transcript he claimed he never received, and (6) an objection to counsel being appointed without his permission. The court attempted to re-focus Mr. Gilcreast back on the matter at hand, i.e., the correction and proper notification of his post-release control terms, but Mr. Gilcreast said he needed more time to prepare, claimed he could not hear the court because it was "breaking up" again, and claimed he did not understand what was going on without his "proper documents."  When questioned as to any audio problems, M.S. informed the court that the connection was not breaking up and, at one point, even turned up the volume on the audio equipment for Mr. Gilcreast.  The court again acknowledged Mr. Gilcreast's claims that he did not understand, and asked if he would like counsel to explain it to him, but he instead offered a rambling and disorganized response: "[W]e back to the counsel.  I don't need counsel to explain it. * * * I need to be able to read it. * * * I need to enter memorandum, and this situation is preventing me from entering evidence * * * I had no knowledge this was a court hearing or a sentencing hearing.  It only said a conference. * * * I was not aware this was a mandated proceeding."

{¶16}  The court exhibited immeasurable patience throughout the proceeding in allowing Mr. Gilcreast to speak on matters he felt were important, but was forced to painstakingly and repeatedly curtail irrelevant ramblings and constant interruptions to allow it to properly inform him of post-release control.  Mr. Gilcreast was unrelenting in his chaotic disruptions, however,

choosing instead, for example, to revisit his argument that he did not have his notes and papers, while complaining that the prosecutor had "all his papers" and the judge had "all [her] notes [and] cases * * *." The trial court forged ahead admirably through Mr. Gilcreast's persistent interruptions and attempts to prevent it from properly advising him of post-release control. Mr. Gilcreast became increasingly frustrated and disruptive as the trial court proceeded further through its explanation of post-release control and as the hearing neared its end. Mr. Gilcreast objected to being found guilty to all charges and even presumed to declare a "mistrial" due to the court's alleged failure to adhere to his rights. He then interrupted by claiming he had a "medical situation" because his nose was bleeding. He also objected to the administrative professional being in the room with him. The court remained steadfast and determined nonetheless as it explained post-release control to Mr. Gilcreast over his continuous interruptions, objections, and claims that he could not hear or did not understand.

{¶17} Upon review of the transcripts, we determine that the trial court substantially complied with Crim.R. 44(A) and conducted a sufficient colloquy with the very disruptive and recalcitrant Mr. Gilcreast, given the totality of the circumstances. Despite his best efforts to derail the hearing and to avoid directly answering most of the court's questions, we determine that Mr. Gilcreast participated sufficiently enough to demonstrate that he knowingly, intelligently, and voluntarily waived his right to counsel. The court explained the limited purpose of the hearing to Mr. Gilcreast several times and, after speaking to two different attorneys, Mr. Gilcreast twice informed the court that he would represent himself and proceed pro se. The court's repeated attempts to offer Mr. Gilcreast appointed counsel were met with staunch resistance each time, and he even objected profusely to the mere presence of standby counsel in the courtroom. When later asked if he would like standby counsel to explain something he claimed to not understand, Mr.

Gilcreast questioned why the court was "back to the counsel" again and said he did not need counsel to explain it.

{¶18} Throughout the proceedings, Mr. Gilcreast appeared educated and well-spoken for the most part, albeit somewhat disorganized and surprisingly reluctant to allow the court to explain post-release control to him. He further demonstrated a rudimentary knowledge or awareness of some basic legal terms and concepts. Moreover, the sole purpose of the limited resentencing hearing pursuant to R.C. 2929.191 was to properly inform Mr. Gilcreast of post-release control. Thus, counsel's usefulness and role at this stage is relatively simple and limited and, because post-release control terms are determined by statute, the dangers and disadvantages of proceeding without counsel are likewise less substantial and more obvious than they are at trial. *Compare Patterson v. Illinois*, 487 U.S. 285, 299-300 (1988) (comparing the waiver of counsel during post-indictment questioning to the waiver of counsel during trial).

{¶19} Thus, considering the totality of the circumstances in this case, we determine that the record demonstrates Mr. Gilcreast knew what he was doing and his choice to proceed without counsel was made "with eyes open." *See Tucker*, 2016-Ohio-1353, at ¶ 11; *Adams*, 317 U.S. at 279. Accordingly, we conclude that the court substantially complied with Crim.R. 44(A), and Mr. Gilcreast knowingly, intelligently, and voluntarily waived his right to counsel. *See Schleiger* at ¶ 21.

{¶20} Mr. Gilcreast's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT-APPELLANT, WHO WAS REPRESENTING HIMSELF, THE OPPORTUNITY TO PARTICIPATE AS A PARTY IN THE PROCEEDING AND REJECTED ALL THE APPELLANT'S REQUESTS TO FILE AND SUBMIT HIS SENTENCING

MEMORANDUM THAT WAS RELEVANT TO THE IMPOSITION OF MANDATORY AND DISCRETIONARY POST-RELEASE CONTROL.

{¶21} In his second assignment of error, Mr. Gilcreast argues that the trial court erred in denying him the opportunity to participate in the proceeding by submitting additional evidence via a sentencing memorandum. We disagree.

{¶22} New sentencing hearings held pursuant to *Bezak* and R.C. 2929.191(C) are limited to the proper imposition of post-release control. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, paragraph two of the syllabus. *See also State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, syllabus. Mr. Gilcreast only argues that the sentencing memorandum he sought to submit "might have support[ed] a sentence other than that imposed." We disagree, as post-release control terms are determined by statute, and thus any "evidence" Mr. Gilcreast wished to present would have been inconsequential to the trial court's imposition of post-release control. *See* R.C. 2967.28.

{¶23} Mr. Gilcreast's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED BY MOVING FORWARD WITH THE AUDIO-VIDEO CONFERENCE OVER APPELLANT'S OBJECTION WHEN THE APPELLANT WAS NOT SUBJECT TO THE VIDEO CONFERENCE RULE IN R.C.[ ]2929.191

{¶24} In his third assignment of error, Mr. Gilcreast argues that the trial court erred in conducting the hearing over his objection because he was not subject to the hearing. We disagree.

{¶25} Mr. Gilcreast argues that he was not subject to the hearing because he was entitled to be physically present and he never waived that right. R.C. 2929.191(C) explicitly states that the offender has the right to be physically present "except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible." A criminal defendant

has a fundamental right, however, to be present at all critical stages of his trial, including sentencing. *See State v. Hach*, 9th Dist. Summit No. 27409, 2014-Ohio-5113, ¶ 6; Crim.R. 43(A)(1). Crim.R. 43(A)(3) requires a waiver of a defendant's right to be physically present in a felony proceeding before a court may permit the defendant's participation by video conference. *Hach* at ¶ 6. Although multiple Ohio courts have held that a trial court errs by holding a video conference resentencing without first obtaining a waiver, these courts have also concluded that such error is harmless absent a showing of prejudice. *See, e.g., State v. Dudas*, 11th Dist. Lake No. 2011-L-093, 2012-Ohio-2121, ¶ 25. Here, we find Mr. Gilcreast's arguments that, because he was not physically present at the hearing, he was unable to both hear the trial court and submit documents to be specious and without merit.

{¶26} First, the record does not support Mr. Gilcreast's claim that he could not hear the court through the video conferencing equipment. At various times throughout the hearing, Mr. Gilcreast indicated that he could not hear the trial court through the audio/video equipment and that the court was instead "breaking up." In response to Mr. Gilcreast's initial complaints that he could not hear or understand what was being said, the court took a break from the hearing and called the prison. An administrative professional ("M.S.") then entered Mr. Gilcreast's room and stayed in the room throughout the remainder of the proceeding. The court confirmed with M.S. that she could hear everything being said by the court. At other times when Mr. Gilcreast claimed he could not hear the court, the record reflects that the court checked with M.S., who assured the court that she could hear and that the connection was not breaking up. Mr. Gilcreast even informs the court at one point that M.S. turned up the volume on the video conferencing equipment. Thus, it appears that the audio/video equipment was, in fact, functioning properly throughout the hearing.

{¶27} Mr. Gilcreast also argues that he was unable to submit documents because he was not physically present. But again, the scope of the hearing was limited to the proper imposition of post-release control, and the trial court did not have discretion to impose anything other than the post-release control terms mandated by statute. *See Hach* at ¶ 7; R.C. 2967.28. Any documents submitted by Mr. Gilcreast would not have changed the post-release control terms to which he was subject.

{¶28} Mr. Gilcreast has not shown how the outcome would have been different if he had been physically present for the hearing, and any error committed by the trial court in having him attend via video conferencing equipment without first obtaining a waiver was harmless. *See Hach* at ¶ 7; Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

{¶29} Mr. Gilcreast's third assignment of error is overruled.

### ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT VIOLATED STATE V. HOLDCROFT * * * WHEN IT IMPOSED A SANCTION OF POST-RELEASE CONTROL ON SENTENCES THE APPELLANT HAD ALREADY COMPLETED SERVING BY THE TIME OF HIS RESENTENCING

{¶30} In his fourth assignment of error, Mr. Gilcreast argues that the trial court did not have jurisdiction to impose post-release control for sentences that he had already served under *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, paragraph three of the syllabus.

{¶31} We agree that "[a] trial court does not have the authority to resentence a defendant for the purpose of adding a term of post[-]release control as a sanction for a particular offense after the defendant has already served the prison term for that offense." *Id.* In support of his argument, Mr. Gilcreast notes that the trial court did not specify the order in which his consecutive sentences would be served. He attempts a general calculation related to when he had served some of his

sentences for purposes of applying *Holdcroft*. The appellate cases relied upon by Mr. Gilcreast in support of his calculation are inapplicable in this case because Mr. Gilcreast's prison sentences derived from a single criminal case. He has not developed an argument, however, regarding the order in which his sentences imposed in that single case should have been served. This Court declines to develop such an argument on his behalf. *See, e.g., State v. Puryear*, 9th Dist. Summit No. 29155, 2019-Ohio-3979, ¶ 6.

{¶32} Nevertheless, the State concedes that the matter must be remanded back to the trial court because, during the resentencing hearing, the court improperly imposed a term of post-release control for count 2, felonious assault, which count was previously merged for purposes of sentencing in 2003. Our review of the record confirms that the trial court notified Mr. Gilcreast at resentencing that he would be subject to a mandatory term of five years post-release control for count 2, felonious assault. The court's journal entry likewise imposes a mandatory five-year term of post-release control for count 2. Mr. Gilcreast's original 2003 sentencing entry explicitly stated, however, that the trial court "declines to sentence said Defendant on the charge of FELONIOUS ASSAULT, as contained in Count 2 of the Indictment, for the reason that said Count is merged with the SPECIFICATION ONE TO COUNT TWO of the Indictment and the charges are DISMISSED." We therefore agree with the State that the trial court erred in imposing a term of post-release control for count 2 at the resentencing hearing.

{¶33} Mr. Gilcreast's fourth assignment of error is overruled, but the matter is remanded back to the trial court to vacate the five-year post-release control term it imposed for count 2, felonious assault.

**ASSIGNMENT OF ERROR FIVE**

THE SENTENCING ENTRY FAILS TO COMPLY WITH CRIM.R.[ ]32(C) WHICH RENDERED THE SENTENCING JOURNAL ENTRY A NON FINAL APPEALABLE ORDER

{¶34} In his fifth assignment of error, Mr. Gilcreast argues that the trial court's journal entry fails to comply with Crim.R. 32(C).

{¶35} This Court addressed a similar argument in *State v. Williams*, 9th Dist. Summit No. 27101, 2014-Ohio-1608, ¶ 9-13. In *Williams*, we determined that the trial court's entry, issued following a limited resentencing hearing in accordance with R.C. 2929.191, was a final appealable order, but nonetheless remanded the matter back to the trial court for it to correct the entry to reflect that it was issued as a nunc pro tunc. *See id.* at ¶ 12-13. In reaching our decision, this Court relied on the Supreme Court of Ohio's decisions in *Fischer* and *Singleton*, and determined that "[i]f the Supreme Court viewed R.C. 2929.191 as requiring trial courts to reissue the original sentencing entry along with the post-release control notification, it could have so specified." *See id.* at ¶ 12. *See also Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434.

{¶36} As in *Williams*, the trial court's entry here does not indicate that it was issued as a nunc pro tunc, and we must remand the matter back to the trial court so that it can correct the entry to reflect the same. *See id.* at ¶ 13. Because a hearing was already held pursuant to R.C. 2929.191, there is no need to hold any further hearings upon remand prior to issuing the nunc pro tunc correction. *See id.* at ¶ 13, fn. 1.

{¶37} Mr. Gilcreast's fifth assignment of error is overruled, but the matter is remanded back to the trial court so that it may correct its journal entry accordingly.

III.

{¶38}   Mr. Gilcreast's assignments of error are all overruled.  The judgment of the Summit County Court of Common Pleas is affirmed, but the matter is remanded back to the trial court for further proceedings consistent with this opinion.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

KEITH L. GILCREAST, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.